OPINION OF THE COURT
Alexander Berman, J.
Petitioner, Nassau Regional Off-Track Betting Corporation, a public benefit corporation created by authority of the New York State Legislature (New York State Off-Track Pari-Mutuel Betting Law enacted by L 1940, ch 254, as amd by L 1973, ch 346, § 4) brings this CPLR article 78 proceeding, seeking a declaration that a certain rule and regulation (9 NYCRR 5204.14 [b]) is null and void; authorizing it to operate the premises 485 Hempstead Turnpike, Elmont, as an off-track betting parlor and enjoining respondent, New York State Racing and Wagering Board, from interfering with such operation. Respondent has not filed an answer, but moves to *360 dismiss the petition on the ground that it fails to state a cause of action (CPLR 3211, subd [a], par 7).
The issue relates solely to an OTB office which petitioner seeks to establish at 485 Hempstead Turnpike, Elmont, the office being the last of 25 betting offices contemplated by petitioner as set forth in a plan of operation approved by the respondent on or about October 23, 1974. Thereafter, by directive dated October 13, 1976, the respondent board stated: "In order to clarify the Board’s requirement in your opening new branches, if your approval Plan of Operation allows for opening of additional branches, then you need only to notify the Board of its location thereof, its opening and that the branch fully complies with the rules and regulations of the Board.”
On or about April 27, 1977, the chairman of the board of petitioner, Easa Easa, notified Thomas Fitzgerald, president of New York Racing Association, hereinafter referred to as NYRA, that it was about to enter into a lease arrangement for the purpose of opening an OTB office in Elmont. Fitzgerald then informed Easa that he would oppose the opening of the branch because of its proximity to Belmont Race Track. NYRA, incidentally, is a private nonprofit racing association which, by virtue of franchise, controls operations of all flat race tracks in New York State. A few days later, on May 3, 1977, at a meeting of the respondent board, petitioner set forth its proposal, including surveys of the community and its investigation on which it based its opinion that the proposed office would meet the requirements of the Elmont community and its conclusion that the proposed office would not adversely affect the business of Belmont Race Track. The following day, May 4, 1977, petitioner was instructed not to proceed to open the branch "until further consideration is undertaken.”
On or about June 1, 1977, the respondent board indicated that it planned to consider adopting a rule which would add the following language to the section as it had previously existed: "(b) No branch office shall be located within one mile of the boundary of any licensed or franchised track except with specific written consent of the track involved and written authorization of the Board.”
To conclude this chronology, on June 6, 1977, counsel to respondent board notified petitioner that the amendment to the rule "could effectively prevent you from opening a branch office such as the one you are now contemplating.” Later, at *361 its meeting of June 28, 1977 the board held a hearing on the proposed rule, during which it heard testimony of NYRA’s president and an officer of the Monticello Raceway in support of the rule and a number of OTB officials, including representatives from Nassau OTB in opposition. The rule was thereafter adopted at its meeting held on August 25, 1977 to become effective September 22, 1977.
In its motion to dismiss the petition, respondent relies solely upon its contention that the proceeding is premature in that petitioner has failed to formally apply for the approval since the adoption of said rule, and has not yet exhausted its administrative remedies. (State Administrative Procedure Act, § 205; CPLR 7801, subd 1.)
It is clear, according to the petition, which for the purposes of this motion must be deemed to be true, that petitioner would be embarking on a futile, wasteful and counter-productive procedure to seek to have the respondent board overturn its own rule. Furthermore, since the rule appears to have been adopted at the behest of NYRA, petitioners would obviously not succeed in obtaining the latter’s consent to an exception to the rule. The law does not require such a useless act, especially when, as here, there is an issue of the constitutionality of the rule approved by a regulatory agency (Figari v New York Tel. Co., 32 AD2d 434).
There is no question but that the proposed OTB office in Elmont is within one mile of Belmont Race Track. The petition sets forth that it is located 3,360 feet from the main gate of Belmont. Therefore, the rule would effectively exclude petitioner from opening the Elmont office. Although the New York City OTB has two offices within one mile of this track, the latter, of course, are not affected by the rule, thereby creating for them the unique position of having a monopoly on OTB offices within one mile of the track.
The authority of respondent to adopt reasonable rules and regulations regarding the operation of OTB offices, section 118 of the New York State Off-Track Pari-Mutuel Betting Law, is clearly spelled out in subdivision 1 of that section. "1. The New York state racing and wagering board shall have general jurisdiction over the operation of all off-track betting facilities within the state, and the board shall issue rules and regulations in accordance with the provisions of this article in order to ensure the accomplishment of the purposes set out in section one hundred sixteen of this article.” Section 116, in *362 setting forth the objectives of this legislation states: "It is also the intention of this article to ensure that off-track betting is conducted in a manner compatible with the well being of the horse racing and breeding industries in this state”.
Although the purpose of the rule appears on its face to be consistent with the apparent authority vested in the respondent, there is a serious question as to the validity of the rule as enacted. In my opinion, it goes beyond the scope of its authority, insofar as it requires the written consent of the race track to any OTB office within one mile of the track. Clearly, such a rule abdicates to a private organization the power to approve OTB offices, even if the respondent might wish to grant such an exception. It has tied its own hands in that regard and must bow to a private organization and obtain its consent to a variance or exception. Nowhere in the enabling legislation is such a rule or authority contemplated. No agency of government has the right to delegate its authority to a private organization unless expressly authorized by statute. This court has the authority in this proceeding to determine the validity of a regulation or rule adopted by a governmental agency.
"While as a general proposition legislative actions are not reviewable by article 78 proceedings * * * there still remains a residuum of judicial right to determine if there has been action in excess of delegated authority or in disregard of standards prescribed by the Legislature.” Matter of Town of Arietta v State Bd. of Equalization (37 AD2d 431, revd for other reasons 30 NY2d 771.)
"Similarly, the power to disqualify an owner who can’t prove to the satisfaction of the stewards that neither he nor his horse is 'disqualified’ from racing is void as an unconstitutional delegation of the licensing power” (Halpern v Lomenzo, 81 Misc 2d 467, 476-477).
It would be a waste of time and a charade to require petitioner now to apply to the respondent for permission to open the Elmont office or for a hearing before the respondent as to the validity of this rule where, as here, the rule was adopted over objections of petitioner, and obviously was prompted to thwart petitioner’s application to open the Elmont office.
Accordingly, it is my determination that the section 5204.14 (b) is void and unconstitutional and beyond the authority of respondent.. However, since there has not been any determina *363 tion on the merits of petitioner’s request for approval of the Elmont office, now that the rule has been declared invalid, I direct that this matter be remanded to respondent for a determination with respect to petitioner’s application and that same be without consideration to said rule.
Because of the issues involved, and the length of time that this matter has been pending, I direct that respondent take the necessary steps to ensure that a determination on petitioner’s application be made within 20 days after service of a copy of the judgment to be entered hereon.