OPINION OF THE COURT
Joseph P. Kuszynski, J.
Plaintiff, Western Regional Off-Track Betting Corporation (OTB), moves pursuant to CPLR 3212 for summary judgment, on its complaint which seeks relief: (1) that plaintiff’s job security obligations toward defendant are defined and limited by plaintiff’s job security provisions; (2) that defendant’s interference with “interface” would be illegal; and (3) that the defendant be permanently enjoined from further attempts or threats to interfere with “interface”
Defendant, Service Employees International Union, AFL-CIO, Local 235 (Local 235), cross-moves for summary judgment dismissing plaintiff’s complaint and for an order requiring plaintiff to enter into negotiations for a job security agreement as mandated by section 6 of chapter 414 of the Laws of 1973 (Off-Track Pari-Mutuel Betting Law, § 129). Both parties agree that there are no triable material issues of fact.
*125 The central issue posed here is whether the Off-Track Pari-Mutuel Betting Law allows for a unilateral promulgation of job security provisions by a regional off-track betting corporation in its plans of operations, or must such provisions be formulated by means of a negotiated agreement with a union representing the employees of an affected racetrack.
In 1973, the State Legislature recognized that the establishment of off-track betting had an adverse effect upon employment at established raceways by diminishing the attendance of the general public at the racetracks. (L 1973, ch 414, § 6 [Off-Track Pari-Mutuel Betting Law, § 129].)
Soon afterwards, OTB and Local 235 representing the employees at the Buffalo Raceway, entered into a job security agreement providing for the disposition of claims for lost employment caused by the adverse impact of the plaintiff’s betting parlors upon attendance at the Buffalo Raceway. It covered claims, compensation and provided for a tripartite panel system for the review and disposition of disputed claims. The agreement also provided for the utilization of the New York State Public Employment Relations Board, in order to pick the third neutral panel member if such member could not be agreed upon. This initial agreement expired at the end of the winter meet held in 1976-1977, and although the agreement contained provisions for its extension, the agreement was not extended.
It appears that a disagreement ensued over large claims in 1976. Between 1976 and 1981, OTB and Local 235 resolved the question of job security by agreeing to a series of lump-sum payments paid by OTB to the union trust fund.
In 1981, OTB, responding to criticism leveled at it by the State Department of Audit and Control concerning the lump-sum payments, prepared unilaterally a job security plan and submitted it to the New York State Racing and Wagering Board for approval. This job security plan was similar to but differed in some key areas from the original 1974 negotiated agreement.
Local 235 submits that it cannot abide by the unilateral OTB plan and demands continuation of the lump-sum *126 payments unless and until a bilateral job security plan is agreed upon.
In its moving papers, plaintiff OTB claims that the defendant Local 235, has threatened to interfere with a program called “interface” whereby computer tapes of offtrack wagering are combined with on-track wagering to form a common betting pool. A short hiatus in the controversy was reached in January, 1982, when after the filing of the original summons and answer in this action, the parties entered into a stipulation which provided that during the pendency of this action, but no later than November 1, 1982, OTB will continue making certain specified lump-sum payments while the defendant, Local 235, agrees not to interfere with “interface”.
The New York State Racing and Wagering Board has general jurisdiction over the operation of all off-track betting facilities within the State of New York. (L 1973, ch 346, § 4 [Off-Track Pari-Mutuel Betting Law, § 119].) An integral part of the legislative scheme for off-track operations is the provision for job security for racetrack employees who .lost their jobs or otherwise are affected. (L1973, ch 414, § 6 [Off-Track Pari-Mutuel Betting Law, § 129].)
Section 6 of chapter 414 of the Laws of 1973, in its pertinent part reads: “Job security for track employees. Plans of operation of regional off-track betting corporations shall include provision for job security for employees of race tracks within each region compatible with and in furtherance of the objectives of this article and subject to the approval of the racing and wagering board. Job security agreements that may be concluded from time to time after July first, nineteen hundred seventy-three between track employee organizations and the New York city offtrack betting corporation or any other regional off-track betting corporation shall be subject to the approval of the board and when approved shall be deemed a part of the plan of operation of such corporation and any other regional corporation”.
OTB argues that there is a distinction to be read between the terms “provision” and “agreement”. It claims that the legislative intent was to authorize unilateral job security *127 provisions as well as bilateral negotiated job security agreements. This court does not agree with plaintiff’s position. A statute or legislative act is to be construed as a whole. (People ex rel. Mason v McClave, 99 NY 83; Matter of Moskowitz v La Guardia, 183 Misc 33, affd 268 App Div 918, affd 294 NY 830.) All parts of a statute are to be read and construed together to determine a legislative intent. (Levine v Bornstein, 4 NY2d 241; Rankin v Shanker, 23 NY2d 111.)
This court construes the language of section 6 of chapter 414 of the Laws of 1973 (Off-Track Pari-Mutuel Betting Law, § 129) to mean that job security provisions must be bilaterally negotiated, between a racetrack union and a regional OTB corporation. This also appears to have been the understanding of the parties in 1974 when they negotiated their first job security agreement which was approved by the Racing and Wagering Board, shortly after the 1973 amendment which mandated job security provisions. In addition to the job security agreement there was correspondence between these same parties wherein OTB acknowledged its responsibility to negotiate an agreement.
It was only in 1981 when the plaintiff was faced with some criticism from the New York State Department of Audit and Control, that it unilaterally prepared and submitted job security provisions to the Racing and Wagering Board, to which the defendant Local 235 objects.
In construing a statute, a court must look to its spirit and purpose, and the objectives of the enacters must be kept in mind. (Matter of Hogan v Culkin, 18 NY2d 330.) Additionally, it should be noted that the Rules of the Racing and Wagering Board address and further define the subject of job security provisions. (9 NYCRR 5203.5.) The above section is entitled “Job security agreements for track employees”. It specifies the manner in which regional OTB corporations are to comply with the job security provisions of section 6 of chapter 414 of the Laws of 1973 (Off-Track Pari-Mutuel Betting Law, § 129). The section reads in part that: “The plan of operation of a corporation shall set forth specifically or by reference to another document which shall be appended thereto the provisions for job security for employees at regional race tracks made and accepted by *128 the employer and the employees involved individually or through their collective bargaining representatives. Such agreements shall cover race tracks affected by off-track betting conducted by the regional corporation”. (9 NYCRR 5203.5.)
The rule-making power of the Racing and Wagering Board clearly defines that job security provisions will be bilateral, negotiated agreements between regional OTB corporations and the track employees. If a rule-making power is not abused, that is, if it is not irrational or unreasonable, the rule or regulation should be upheld. (Finger Lakes Racing Assn, v New York State Racing & Wagering Bd., 58 AD2d 285, mod 45 NY2d 471; Matter of Albano v Kirby, 36 NY2d 526.)
Plaintiff OTB relies on the case of Matter of Nassau Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd. (93 Misc 2d 359), concerning its argument that the Racing and Wagering Board exceeded its authority when it formulated 9 NYCRR 5203.5, because the board delegated authority concerning its operations to a private party. Plaintiff’s reliance is misplaced. The plan of operation approval or disapproval and the circumstances of OTB operation are clearly under the authority of the Racing and Wagering Board. The track employees’ union simply negotiates an agreement which is only a component part of OTB’s plan of operations. There are sufficient procedural safeguards in the Labor Law for dispute resolution, so that the plaintiff and the board are assured of continuity in their operation. It appears that the only impediment to the plaintiff’s operation is its refusal to negotiate.
OTB argues also that the agreed upon lump-sum payments constitute a gift of public funds, and are illegal. Funds appropriated by OTB for this purpose are not a gift of public funds, but a proper exercise of authority legislatively sanctioned. Clearly, the plan of the Western Region OTB, unilaterally promulgated, is an attempt to rewrite section 6 of chapter 414 of the Laws of 1973 (Off-Track Pari-Mutuel Betting Law, § 129), which provides for negotiated agreements as previously outlined. Unilateral rule-making in this area, would require a clear legislative mandate.
*129 It is only just and reasonable that arrangements for new employment and compensation claims to replace the lost jobs due to the presence of off-track betting parlors, be accomplished by means of an agreement with the displaced workers or their duly authorized union representatives.
In the absence of a bilateral agreement, this court cannot approve the new job security provisions and summary judgment on plaintiff OTB’s requests for declaratory and injunctive relief is denied.
Defendant Local 235’s motion for summary judgment dismissing the plaintiff’s complaint is granted as is its request that the plaintiff, Western Regional Off-Track Betting Corporation, be ordered to enter into negotiations for a job security agreement.