WESTERN REGIONAL OFF-TRACK BETTING CORPORATION, Appellant, v SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, LOCAL 235, TICKET SELLERS, TICKET TAKERS, DOORMEN AND USHERS, Respondent.

Fourth Department, January 31, 1983

APPEARANCES OF COUNSEL

*Moot, Sprague, Marcy, Landy, Fernbach & Smythe* (*John B. Drenning* of counsel), for appellant.

*Weston, Kane & Moen, P. C.* (*Timothy J. Kane* of counsel), for respondent.

OPINION OF THE COURT

DENMAN, J.

The issue presented is whether the New York State Off-Track Pari-Mutuel Betting Law (Pari-Mutuel Revenue Law [L 1940, ch 254], art VI, as added by L 1973, ch 346, as amd) permits plaintiff, a regional off-track betting corporation, to promulgate job security provisions unilaterally for

inclusion in its plan of operations or whether such provisions must be formulated through negotiations with a union such as defendant, which represents the affected employees. We find that plaintiff is required to enter into bilateral negotiations for a job security agreement.

When the legislation creating regional off-track betting corporations (OTB) was enacted, the Legislature recognized that there would be an adverse impact on employees at established raceways because of a decrease in attendance. Consequently, the Legislature provided that OTB was required to include within its plan of operation "provision for job security for employees of race tracks within each region", subject to the approval of the New York State Racing and Wagering Board (Board) (Off-Track Pari-Mutuel Betting Law, § 129, as amd by L 1973, ch 414, § 6). In 1974 plaintiff informed the Board that it intended to comply with that requirement by executing an agreement with defendant, the recognized bargaining agent for employees of the Buffalo Trotting Association, operators of Buffalo Raceway. There were continuing negotiations and an agreement was initially reached but, for reasons not relevant here, that agreement was never implemented and eventually expired. In 1976, however, in response to a threat of a "work action" which would have halted OTB's operations, OTB established a practice of making annual lump-sum payments to the union's health and welfare fund.

In January, 1981 a report of the State Comptroller criticized that practice, finding that such contributions "bear little relation to their original purpose" of providing job security for individual racetrack employees. Responding to that criticism, OTB unilaterally adopted new job security provisions which were approved by the Board. Those provisions called for direct payments to displaced employees or for such employees to be hired to fill vacancies at OTB. Defendant union, however, had established its own severance pay plan, funding it with the lump-sum payments already contributed and demanding that such payments continue. If payments were not continued, the union threatened to refuse to allow the combination of off-track and on-track bets in a common betting pool (referred

to in the trade as "interface"). Inasmuch as OTB is prohibited from accepting off-track bets unless they are pooled with on-track bets, such work action would have halted OTB's operations. This threat prompted the present litigation. Pending its outcome, the parties entered into a stipulation whereby the union agreed not to engage in a work action on condition that OTB make a lump-sum payment to the union's security fund of $36,000.

OTB sought a declaratory judgment that its obligations to defendant are defined and limited by its job security provisions and a permanent injunction restraining the union from interfering with its "interface" operations. Special Term denied that motion and granted defendant's cross motion for summary judgment dismissing OTB's complaint and declaring that OTB is required to negotiate with the union (115 Misc 2d 124).

We agree with Special Term that section 129 of the New York State Off-Track Pari-Mutuel Betting Law requires bilateral negotiations of job security agreements for racetrack employees adversely affected by OTB operations. In addition to requiring plaintiff to include a job security provision in its plan of operation, the statute refers to "[j]ob security agreements" to be "concluded" between regional OTB corporations and track employee organizations. Viewing those provisions as a whole and harmonizing them with the legislative purpose of ameliorating the harsh effects of off-track betting on existing racetrack employees (see *Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.*, 45 NY2d 471, 476), we believe that section 129 must be read as requiring such negotiations. Further, such negotiations are required by regulation of the Board (9 NYCRR 5203.5). As the administrative agency charged with the duty of implementing the Off-Track Pari-Mutuel Betting Law, the Board is empowered to issue rules and regulations so long as they are not in conflict with the statute (see *Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.*, 45 NY2d 471, 480, *supra*). Inasmuch as we conclude that the regulation here is in furtherance of the statutory scheme, the Board's interpretation should be treated with deference (*Matter of Johnson v Joy*, 48 NY2d 689, 691; *Matter of*

*Albano v Kirby,* 36 NY2d 526, 532; *Matter of Howard v Wyman,* 28 NY2d 434, 438).

We emphasize, however, that bilateral negotiations do not consist of mere capitulation by OTB to the union's demand for annual lump-sum payments. That practice is in contravention of section 129 which provides that job security agreements "shall be subject to the approval of the board". In entrusting control over job security agreements to the Board, the Legislature presumably wished to insure the adoption of reasonable measures, uniform throughout the State, and to prevent practices such as that involved here which are lacking in accountability and not reasonably related to the legislative objective of compensating individual employees upon whom there has been a negative impact. A major obstacle to successful negotiation is that the statutory scheme is deficient in failing to provide any method for dispute resolution between OTB and the union. The provisions for dispute resolution under the Labor Law are insufficient inasmuch as they are voluntary and provide no means of compelling the parties to reach an agreement or to prohibit the employees from striking. A strike could arguably be prevented by a good faith effort by each of the parties to negotiate a job security agreement but in the event such negotiations break down, the legislation fails to provide a vehicle for resolution. This is clearly a problem which the Legislature must address for, as recently noted by the Court of Appeals in another context, "the remedy for a harsh law is not in strained interpretation by the judiciary, but rather its amendment or repeal by the Legislature" *(Finger Lakes Racing Assn. v New York State Racing & Wagering Bd., supra,* p. 480).

In that regard, we note that although there has been a complete revision of the legislation and a new Racing, Pari-Mutuel Wagering and Breeding Law has been enacted, effective April 1, 1983, section 129 (now Racing, Pari-Mutuel Wagering and Breeding Law, § 530) is continued in its present form. It would seem to be to the advantage of both parties and in furtherance of the legislative purpose if lengthy and unproductive disputes such as that involved here could be resolved in an appropriate forum.

Accordingly, the order denying plaintiff's motion and granting defendant's motion dismissing the complaint should be affirmed. We add, however, that should defendant refuse to negotiate in good faith, our decision in this matter does not foreclose plaintiff from seeking similar relief from the court.

HANCOCK, JR., CALLAHAN and SCHNEPP, JJ., concur with DENMAN, J.; SIMONS, J. P., not participating.

Order affirmed, without costs.