OPINION OF THE COURT
 

 Cooke, J.
 

 Both of these actions, consolidated for purposes of appeal, involve the distribution of retained commissions from off-track pari-mutuel betting moneys to the Finger Lakes Racing Association, Inc. (FLRA).
 

 In the first, a controversy submitted upon agreed facts pursuant to CPLR 3222, FLRA seeks a determination that certain rules and regulátions promulgated by the New York State Racing and Wagering Board (Board) are invalid in that they conflict with various sections of the Off-Track Pari-Mutuel Betting Law (L 1973, ch 346, as amd, hereinafter cited to the McKinney’s Unconsolidated Laws [Book 65]). The second action is one for an accounting brought by FLRA against the Western Regional Off-Track Betting Corp. (WROTBC) to collect certain moneys allegedly due FLRA in accordance with the distribution tables set forth in section 8071 of the Unconsolidated Laws.
 

 Although generally prohibited in the State, gambling is constitutionally permitted with respect to betting on horse races in such manner as the Legislature may prescribe (NY Const, art I, § 9; see
 
 Finger Lakes Racing Assn. v New York State Off-Track Pari-Mutuel Betting Comm.,
 
 30 NY2d 207, 216, mot to amd remittitur granted 30 NY2d 946). Prior to 1970, pari-mutuel betting was restricted to the grounds of harness or thoroughbred racetracks (L 1940, ch 254). In that year, in an effort to combat illegal bookmaking and thereby enhance the revenues of State and local governments, the Legislature established off-track pari-mutuel betting. The new law provided for the reimbursement of moneys to the tracks
 
 *476
 
 for revenues lost on account of decreases in their "handle”
 
 [1]
 
 and attendance caused by such betting (L 1970, ch 143). However, the newly enacted law was found to have taken too great a toll at the expense of racetracks in the State and the local breeding industry. Hence, corrective legislation was deemed necessary (see, generally, Report of the Governor’s Commission on the Future of Horse Racing in New York State, March, 1973).
 

 Accordingly, in 1973 the Legislature revamped the OffTrack Pari-Mutuel Betting Law (L 1973, ch 346, as amd), establishing seven, later eight, horse racing regions throughout the State and creating regional off-track betting corporations to administer the off-track betting program. Unfortunately, the law itself is an imbroglio, being born out of the union of diverse racing industry interests and legislative compromise.
 

 FLRA, the only thoroughbred racing association in the State, operates Finger Lakes Racetrack near Canandaigua in Ontario County. Although FLRA is thus situated within the Western Region (Unconsolidated Laws, § 8063, subd 1, par [8]), it also comprises part of the State’s only special betting district (Unconsolidated Laws, § 8067, subd 5). This special betting district was at the relevant time composed of counties located within the Central, Catskill and Western Regions and constitutes the geographic market from which FLRA draws its patrons. In effect, the law provides that while FLRA is conducting a meeting, all off-track betting offices within the special district are prohibited from accepting bets on nonprofit racing association (NYRA)
 
 [2]
 
 races. However, outside the special betting district, off-track betting establishments are permitted to accept wagers on NYRA races regardless of whether FLRA is conducting a meeting. Thus, it is evident that the special betting district was created as a result of a legislative determination that FLRA would suffer a decrease in its handle and attendance if off-track bets on NYRA races were accepted within its geographic market while it was conducting a meeting. This conclusion is further buttressed by the fact that off
 
 *477
 
 track establishments located within the Western Region but outside the special betting district are entitled to take bets on NYRA races at all times, reflecting a legislative judgment that FLRA would not suffer as a result of such wagering.
 

 FLRA contends that WROTBC has wrongfully withheld its statutory share of retained commissions
 
 [3]
 
 due for off-track bets placed in 1974. Essentially, FLRA maintains that it is owed moneys on account of two categories of wagers. The first is regular and exotic
 
 [4]
 
 bets placed on NYRA races within the Western Region but outside the special betting district during FLRA’s meeting. The second is regular and exotic bets placed on NYRA races within the special district when FLRA is not conducting a meeting.
 

 Distribution of retained commissions is governed by section 8071 of the Unconsolidated Laws. The statute is rather complex, containing numerous permutations. The basic issue presented is whether FLRA has the status of a regional track for purposes of distribution of retained commissions on bets placed on NYRA races within the Western Region but outside the special district. We conclude that it does not.
 

 A reading of section 8071 leads unmistakably to the conclusion that FLRA is a regional track only within the confines of the special betting district. In that statute the Legislature has made specific distinctions between FLRA and regional tracks in parts of the three regions in which the special betting district, and of course FLRA, is located. Thus, FLRA receives all retained commissions on off-track bets placed on its own races within the district, with no moneys going to the "regional track”. It also receives a smaller percentage of the retained commission on out-district bets placed on its own races than does the "regional track” (Unconsolidated Laws, § 8071, subd 1, par [a]). During the FLRA meeting, there simply would be no need to distinguish between FLRA and the "regional track” with respect to out-district races if the special betting district were not considered a separate region in this context.
 

 The remaining paragraphs of section 8071 bring this distinc
 
 *478
 
 tion into even sharper focus. Thus, paragraph (d) of subdivision 1 provides that pools on out-of-State races are divided among the regional harness tracks and/or FLRA within that portion of the special betting district situated within the Western Region. In those counties outside the special betting district but within the Western Region, retained commissions are divided between in-region harness tracks and the NYRA, with FLRA receiving nothing. If FLRA was a track within the Western Region, the Legislature surely would have afforded it a portion of the commissions shared by other in-region tracks (see, also, Unconsolidated Laws, § 8071, subd 1, par [c]).
 

 Indeed, the very reason for creation of the special betting district — to insulate FLRA’s attendance and handle from the effect of off-track bets on NYRA races — militates against the conclusion that FLRA is anything but a regional track only within its special betting district. Absent creation of the special betting district, there could be no bets on NYRA races placed anywhere within the entire Western Region while FLRA was conducting its meeting. Thus, the two harness tracks located within the region
 
 [5]
 
 would see an appreciable decrease in their share of retained commissions since there would be no pool on NYRA races within the entire region. Hence, FLRA has received a benefit to the extent that its market within the special betting district is protected by the prohibition of placing bets on NYRA races. At the same time, because of the benefit afforded FLRA the regional harness tracks suffer a loss since there is no NYRA pool to divide arising from establishments within the special betting district. As a price for that benefit, however, the Legislature has prohibited FLRA from sharing in the out-district NYRA pools by treating it as a regional track within its district. While the Legislature has certainly voiced its wishes in muted strains, the over-all structure and plain language of the statute support no other rational conclusion.
 

 Distribution of the retained commissions derived from regular and exotic bets placed within that portion of the special betting district situated within the Western Region on NYRA races when FLRA is not conducting a meeting is governed by paragraph (c) of subdivision 1 of section 8071 which provides:
 

 "(c) For the portions of the Catskill, Central and Western
 
 *479
 
 regions included within a special betting district, when no thoroughbred race meeting is conducted by a racing association or corporation located within such special district, the distribution of the retained commission to 'regional tracks’ by such regional corporation derived from wagers placed within such special betting district shall be divided as follows:
 

 "(i) when a harness corporation located in such
 
 district
 
 is conducting a meet the full amount to such harness corporation; and
 

 "(ii) when no racing is being conducted, in the case of the affected portions of the Catskill and Central regions, fifty per centum to the thoroughbred racing association or corporation and fifty per cent to the harness track located within such region, and, in the case of the affected portion of the Western region, forty per cent to the thoroughbred racing association or corporation and the balance divided equally between the harness racing corporations located in such region.” (Emphasis added.)
 

 Neither Batavia Downs nor FLRA, the only two Western Region tracks within the confines of the special betting district, conducted a meeting between December 3 to December 31, 1974. The only meeting then being conducted within the region during that period was at Buffalo Raceway. Thus, the plain and simple language of paragraph (c) would require that the commissions retained from wagers placed within the special betting district be distributed in accordance with clause (ii). However, the Board contends, and the Appellate Division so held, that use of the word "district” in clause (i) of the statute was legislative oversight and should be read as "region”. Accordingly, it awarded Buffalo Raceway, the only harness track in the region then conducting a meeting, all commissions retained from within the special betting district during that period (58 AD2d 285, 292-295).
 

 Although undoubtedly well intentioned and its reasoning well articulated, the court below erred. While it is possible that the Legislature may have intended that "district” mean "region”, courts should be extremely hesitant in interpolating their notions of policy in the interstices of legislative provisions
 
 (Matter of Erie County Agrie. Soc. v Cluchey,
 
 40 NY2d 194, 200;
 
 McCluskey v Cromwell,
 
 11 NY 593, 601). Courts are constitutionally bound to give effect to the expressed will of the Legislature and the plain and obvious meaning of a statute is always preferred to any curious, narrow or hidden
 
 *480
 
 sense that nothing but a strained interpretation of legislative intent would discern (see
 
 Matter of Palmer v Spaulding,
 
 299 NY 368, 371-372).
 

 It is an elementary principle of statutory construction that courts may only look behind the words of a statute when the law itself is doubtful or ambiguous
 
 (Johnson v Hudson Riv. R. R. Co.,
 
 49 NY 455, 462). If, as here, the terms of a statute are plain and within the scope of legislative power, it declares itself and there is nothing left for interpretation. To permit a court to say that the law must mean something different than the common import of its language would make the judicial superior to the legislative branch of government and practically invest it with lawmaking power. True, the statute as written may work an unwarranted detriment to racetracks outside the special betting district in the Western, Central and Catskill Regions. But the remedy for a harsh law is not in strained interpretation by the judiciary, but rather its amendment or repeal by the Legislature.
 

 There remains for our consideration FLRA’s challenge to the rules promulgated by the Board (9 NYCRR 5211.1
 
 et seq.,
 
 eff April 30, 1976). We reject FLRA’s contention that the Board was without power to promulgate rules and regulations concerning the distribution of retained commissions to racetracks throughout the State. An administrative agency is imbued with such powers as are conferred upon it by the Legislature by the specific terms of its enabling act or as may be necessarily implied therefrom
 
 (Matter of Peters v New York City Housing Auth.,
 
 307 NY 519, 531;
 
 Packer Coll. Inst. v University of State of N. Y,
 
 298 NY 184, 190). The Legislature has delegated broad authority to the Board by virtue of subdivision 1 of section 8064 of the Unconsolidated Laws which empowers it to "issue rules and regulations in accordance with the provisions of [the Off-Track Pari-Mutuel Betting Law]”. This grant of authority to the Board necessarily includes the power to promulgate regulations concerning distribution of commissions retained from off-track pari-mutuel bets.
 

 Of course, the Board is without power to promulgate rules in contravention of the will of the Legislature. "Administrative agencies can only promulgate rules to further the implementation of the law as it exists; they have no authority to create a rule out of harmony with the statute”
 
 (Matter of Jones v Berman,
 
 37 NY2d 42, 53; see, also,
 
 Matter of Albano v
 
 
 *481
 

 Kirby,
 
 36 NY2d 526, 532;
 
 Matter of Howard v Wyman,
 
 28 NY2d 434, 438). Since we have already determined that FLEA is a regional track within the special betting district for purposes of division and distribution of retained commissions arising out of wagers placed on NYRA races within the out-district portion of the Western Region, 9 NYCRR 5211.3 (g), 5211.4 (a)-(d) and 5211.12 (a)-(d) are valid as consistent with the legislative scheme. However, since 9 NYCRR 5211.5 (a) and 5211.13 (a) are in direct conflict with the plain language of section 8071 (subd 1, par [c]) of the Unconsolidated Laws they are, by definition, invalid.
 

 Accordingly, the orders of the Appellate Division should be modified in accordance with this opinion, without costs, and, except as so modified, affirmed.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
 

 In each case: Order modified, etc.
 

 [1]
 

 . The "handle” is that sum deposited in the pari-mutuel pool (see Unconsolidated Laws, § 8071).
 

 [2]
 

 . NYRA is the only nonprofit racing association within the State and operates Aqueduct, Saratoga and Belmont Park located in the New York City, Capital and Nassau District Regions. FLRA, which operates the only other thoroughbred racetrack in the State is, as noted, a racing association.
 

 [3]
 

 . The retained commission is breakage plus that sum that is retained by the offtrack betting corporations after making payment on winning tickets (see Unconsolidated Laws, § 8071, subd 1).
 

 [4]
 

 . An exotic bet is a single wager on three or more horses evidenced by a single ticket constituting an interest in a single betting pool (Unconsolidated Laws, § 8063, subd 2).
 

 [5]
 

 . Buffalo Raceway and Batavia Downs. Batavia Downs is situated within the special betting district.