[846 NYS2d 687]

In the Matter of SUFFOLK REGIONAL OFF-TRACK BETTING CORPO-
RATION, Appellant, v NEW YORK STATE RACING AND WAGER-
ING BOARD et al., Respondents. (And Four Other Related
Proceedings.)

Third Department, November 29, 2007

**APPEARANCES OF COUNSEL**

*Neil H. Tiger, Corporation Counsel*, Hauppauge, for Suffolk Regional Off-Track Betting Corporation, appellant.

*Stern & Rindner,* Goshen (*Mark D. Stern* of counsel), for Catskill Regional Off-Track Betting Corporation, appellant.

*Powers & Santola,* Albany (*Michael J. Hutter* of counsel), for Capital District Regional Off-Track Betting Corporation, appellant.

*Garry & Garry,* New York City (*Thomas J. Garry* of counsel), for Nassau Regional Off-Track Betting Corporation, appellant.

*Michael A. Cardozo, Corporation Counsel,* New York City (*Ira H. Block* of counsel), for New York City Off-Track Betting Corporation, appellant.

*Andrew M. Cuomo, Attorney General,* Albany (*Victor Paladino* of counsel), for New York State Racing and Wagering Board, respondent.

*Bleakley, Platt & Schmidt, L.L.P.,* White Plains (*Frederick J. Martin* of counsel), for Yonkers Racing Corporation, respondent.

*Nolan & Heller,* Albany (*Richard L. Burstein* of counsel), for Saratoga Harness Racing, Inc. and another, respondents.

*Marvin Newberg,* Monticello, for Monticello Raceway, respondent.

### OPINION OF THE COURT

PETERS, J.

In February 2005, respondent New York State Racing and Wagering Board (hereinafter the Board) issued three final determinations that affected the distribution of funds that is required to be made by petitioners to various harness racing tracks pursuant to the Racing, Pari-Mutuel Wagering and Breeding Law. In one, the "maintenance of effort" determination, the Board addressed the scope of payments required under Racing, Pari-Mutuel Wagering and Breeding Law § 1017-a (2) (a) which details a minimum level of distributions that must be made to regional harness tracks from certain commissions retained by petitioners. In another, the "separate calculation" determination, the Board ruled that the guaranteed payments of Racing, Pari-Mutuel Wagering and Breeding Law § 1017-a (2) (a) must be calculated and paid separately for each regional harness track, rather than on a total regional basis. In the last, the "dark day" determination, it was found that under Racing, Pari-Mutuel Wagering and Breeding Law § 1017, petitioners are required to distribute a portion of retained commissions on thoroughbred races conducted at out-of-state tracks to their regional harness tracks on those days when the New York Rac-

ing Association is not conducting racing and the regional harness tracks are neither accepting wagers nor displaying the simulcast signal from any other thoroughbred track in or out of New York. Seeking to annul those determinations, petitioners commenced these five proceedings pursuant to CPLR article 78. Supreme Court dismissed the petitions, prompting this appeal.

■ Initially, we must decide if the determinations rendered by the Board are, in fact, administrative rules which should have been enacted in accordance with the State Administrative Procedure Act (*see* State Administrative Procedure Act § 202), or are, instead, interpretive statements or declaratory rulings which are exempt from those requirements (*see* State Administrative Procedure Act §§ 102, 204; *see Matter of Elcor Health Servs. v Novello*, 100 NY2d 273, 279 [2003]; *Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health*, 66 NY2d 948, 951 [1985]). We conclude, as did Supreme Court, that the Board's determinations serve to explain its interpretation of the relevant provisions of the Racing, Pari-Mutuel Wagering and Breeding Law and are thus exempt from the requirements of the State Administrative Procedure Act.

We now address each determination. In so doing, we note that we typically defer to an administrative agency's interpretation of a statute if not "irrational or unreasonable" (*Matter of Ontario County v Capital Dist. Regional Off-Track Betting Corp.*, 162 AD2d 865, 867 [1990]) since it has a "knowledge and understanding of [its] underlying operational practices" (*Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal*, 5 NY3d 303, 312 [2005] [internal quotation marks and citations omitted]; *see Matter of Capital Dist. Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd.*, 54 NY2d 154, 158 [1981]). However, we are "constitutionally bound to give effect to the expressed will of the Legislature" (*Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.*, 45 NY2d 471, 479 [1978]) and need not rely on the special competence of an administrative agency when the words of the statute are plain and unambiguous (*see Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal*, 5 NY3d at 312).

■ Reviewing first the challenge to the maintenance of effort determination regarding payments due to regional harness tracks pursuant to Racing, Pari-Mutuel Wagering and Breeding Law § 1017-a (2) (a), we find the issue distills not to the Board's determination that credits will be allowed under Racing, Pari-

Mutuel Wagering and Breeding Law § 1017-a for payments made on simulcast wagering after 7:30 P.M., but to the 6:00 P.M. limitation placed on payments which could be credited under Racing, Pari-Mutuel Wagering and Breeding Law § 1016.

Racing, Pari-Mutuel Wagering and Breeding Law § 1017-a declares, at its outset, that "[l]icensed simulcast facilities may accept wagers and display the signal of out-of-state or out-of-country thoroughbred tracks after 7:30 P.M. in accordance with the provisions of this section" (Racing, Pari-Mutuel Wagering and Breeding Law § 1017-a [1]). For those off-track betting facilities which seek to engage in simulcasting, a payment schedule must be approved by the Board that is "identical to the actual payments and distributions of such payments to tracks and purses made by such off track corporation pursuant to the provisions of section [1016] of this article during the year [2002], as derived from out-of-state harness races displayed after 6:00 P.M." (Racing, Pari-Mutuel Wagering and Breeding Law § 1017-a [2] [a]). It next declares that "such scheduled payments shall be made from revenues derived from any simulcasting conducted pursuant to this section and section [1016] of this article" (Racing, Pari-Mutuel Wagering and Breeding Law § 1017-a [2] [a]). This last sentence, the source of the payments, is where the challenge is focused. Petitioners contend that pursuant to such language, they are entitled to a credit for all payments made pursuant to section 1016, regardless of the time of day.

Based upon our reading of the plain language of the statute, we agree. While we recognize that the legislative underpinnings of this statute are consistent with the Board's interpretation, we are constrained by the clear and unambiguous language utilized by the Legislature. As the Court of Appeals has guided, "[t]o permit a court to say that the law must mean something different than the common import of its language would make the judicial superior to the legislative branch of government and practically invest it with lawmaking power . . . [b]ut the remedy for a harsh law is not in strained interpretation by the judiciary, but rather its amendment or repeal by the Legislature" (*Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.*, 45 NY2d at 480).

Reviewing the separate calculation determination, we agree with the Board's interpretation of Racing, Pari-Mutuel Wagering and Breeding Law § 1017-a (2) (a) that the schedule of payments made to "tracks and purses" means that payments are to be calculated to an individual, as opposed to a regional,

track. Constitutionally bound to abide by the clear and unambiguous language of the statute which, this time, reflects the intent of the Legislature to protect harness tracks from a decrease in revenues caused by evening simulcasting, we note that had the Legislature intended that the calculation be made on a regional track basis, it would have employed the language it used in the very next section of the statute (*see* Racing, Pari-Mutuel Wagering and Breeding Law § 1017-a [2] [b]).

Finally reviewing whether the dark day payments, specified in Racing, Pari-Mutuel Wagering and Breeding Law § 1017 (1) (b) (5) (E) and (6) (F), apply to petitioners, we reiterate the characterization made by the Court of Appeals in 1978 when commenting on the revamping of this law in 1973, to wit: "the law itself is an imbroglio, being born out of the union of diverse racing industry interests and legislative compromise" (*Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.*, 45 NY2d at 476). As these are the only two subsections which require dark day payments and the headings to those subsections specify that these payments are to be made by those facilities licensed under Racing, Pari-Mutuel Wagering and Breeding Law § 1007, which would not include petitioners, we are again left with what appears to be clear and unambiguous language. Typically, the heading of a statute is not part of the act and "may not alter or limit the effect of unambiguous language in the body of the statute itself" (McKinney's Cons Laws of NY, Book 1, Statutes § 123 [b]). Yet, when a heading has been "inserted by the Legislature as a part of the . . . statute, it limits and defines its effect, and is construed accordingly" (McKinney's Cons Laws of NY, Book 1, Statutes § 123 [b]; *compare People ex rel. Pughe v Parrott*, 302 AD2d 823, 825 [2003]). While custom and usage "may afford a practical construction" of a statute (McKinney's Cons Laws of NY, Book 1, Statutes § 127), the clear language of a statute cannot be disregarded simply because it conflicts with the custom and usage of the implementing agency (*see Anderson v Regan*, 53 NY2d 356, 361-362 [1981]).

Here, the subsection headings at issue were included by the Legislature when the statute was enacted and, as such, limit its effect (*see* L 1997, ch 445, § 23). Recognizing that the parallel provisions of this highly complex statute are identical in almost every other respect, except when dealing with the dark day payments, we are constrained to abide by a strict construction of this statute when the terms are clear and unambiguous. Had

the Legislature intended otherwise, it would have made such change in the 2003 amendments to this statute. Hence, we must "be extremely hesitant in interpolating [our] notions of policy in the interstices of legislative provisions" (*Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.*, 45 NY2d at 479).

Accordingly, the judgment of the Supreme Court is hereby modified by reversing that portion which upheld the Board's February 16, 2005 maintenance of effort determination as well as its February 23, 2005 dark day payment determination.

CREW III, J.P., MUGGLIN, ROSE and KANE, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as dismissed that part of the petitions challenging the maintenance of effort determination and the dark day payment determination; petitions granted to that extent and said determinations annulled; and, as so modified, affirmed.