[900 NE2d 970, 872 NYS2d 419]

In the Matter of Suffolk Regional Off-Track Betting Corpo-
ration, Appellant-Respondent, v New York State Racing
and Wagering Board et al., Respondents-Appellants. (And
Four Other Related Proceedings.)

Argued November 19, 2008; decided December 17, 2008

## POINTS OF COUNSEL

*Andrew M. Cuomo, Attorney General,* Albany (*Victor Paladino, Barbara D. Underwood* and *Andrea Oser* of counsel), for New York State Racing and Wagering Board, respondent-appellant. I. The New York State Racing and Wagering Board's reasonable interpretation of the statutory maintenance of effort provision should have been sustained. (*People v Ryan,* 274 NY 149; *Bragg v Genesee County Agric. Socy.,* 84 NY2d 544; *New York State Bankers Assn. v Albright,* 38 NY2d 430.) II. The Racing, Pari-Mutuel Wagering and Breeding Law obligates Off-Track Betting Corporations to make dark day payments to regional harness tracks. (*Matter of Dawn Joy Fashions v Commissioner of Labor of State of N.Y.,* 90 NY2d 102; *Matter of Ontario County v Capital Dist. Regional Off-Track Betting Corp.,* 162 AD2d 865; *People ex rel. Pughe v Parrott,* 302 AD2d 823.)

*Bleakley Platt & Schmidt, LLP,* White Plains (*Frederick J. Martin, Susan E. Galvão* and *Robert D. Meade* of counsel), for Yonkers Racing Corporation, respondent-appellant. I. The New York State Racing and Wagering Board and Supreme Court correctly construed the provisions of section 1017-a of the Racing, Pari-Mutuel Wagering and Breeding Law. (*Matter of Capital Dist. Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd.,* 54 NY2d 154; *Matter of Finger Lakes Racing Assn., Inc. v State of N.Y. Racing & Wagering Bd.,* 34 AD3d 895, 8 NY3d 810.) II. The New York State Racing and Wagering Board and Supreme Court correctly construed the provisions of section 1017 of the Racing, Pari-Mutuel Wagering and Breeding Law.

*Nolan & Heller, LLP,* Albany (*Richard L. Burstein* of counsel), for Saratoga Harness Racing, Inc., respondent-appellant. The New York State Racing and Wagering Board's (Board) determinations should be upheld as they are reasonable interpretations by the agency vested with authority to administer the statute, and draw upon the Board's understanding of the underlying operational practices in the industry. (*Matter of Ontario County v Capital Dist. Regional Off-Track Betting Corp.,* 162 AD2d 865; *Matter of Excellus Health Plan v Serio,* 303 AD2d 864, 2 NY3d 166; *Matter of Capital Dist. Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd.,* 54 NY2d 154; *Matter of Finger Lakes Racing Assn., Inc. v State of N.Y. Racing & Wa-*

*gering Bd.,* 34 AD3d 895; *People ex rel. Pughe v Parrott,* 302 AD2d 823; *People v O'Neil,* 280 App Div 145; *City of Poughkeepsie v Town of Poughkeepsie,* 52 Misc 2d 721, 37 AD2d 852.)

*Marvin Newberg,* Monticello, for Monticello Raceway Management, Inc., respondent-appellant. The custom and usage in the harness racing industry lend further support to the conclusion that the Racing, Pari-Mutuel Wagering and Breeding Law obligates Off-Track Betting Corporations to make dark day payments to regional harness tracks. (*Anderson v Regan,* 53 NY2d 356; *Matter of Kolb v Holling,* 285 NY 104; *New York State Bankers Assn. v Albright,* 38 NY2d 430; *Wasserbauer v Marine Midland Bank—Rochester,* 92 Misc 2d 388; *City of Poughkeepsie v Town of Poughkeepsie,* 52 Misc 2d 721, 37 AD2d 852; *Knapp v Fasbender,* 1 NY2d 212; *Blaine Personnel v Lee Org.,* 76 Misc 2d 110; *Matter of Ontario County v Capital Dist. Regional Off-Track Betting Corp.,* 162 AD2d 865.)

*Jaspan Schlesinger Hoffman, LLP,* Garden City (*Thomas J. Garry* and *Keith M. Corbett* of counsel), for Nassau Regional Off-Track Betting Corporation, appellant-respondent. I. The Appellate Division, Third Department erred in dismissing appellants-respondents' petitions as the New York State Racing and Wagering Board's "separate payment" determination contradicts Racing, Pari-Mutuel Wagering and Breeding Law § 1017-a (2) (a). (*Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.,* 45 NY2d 471; *Weiss v City of New York,* 95 NY2d 1; *Matter of Beer Garden v New York State Liq. Auth.,* 79 NY2d 266; *Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.,* 77 NY2d 753.) II. The Appellate Division, Third Department erred in holding that the New York State Racing and Wagering Board's "separate payment" determination was exempt from the rule-making authority requirements of the State Administrative Procedure Act. (*Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health,* 66 NY2d 948; *Matter of Schwartfigure v Hartnett,* 83 NY2d 296; *Matter of Cordero v Corbisiero,* 80 NY2d 771.) III. The Appellate Division, Third Department correctly held that the New York State Racing and Wagering Board's "dark day" determination is contrary to Racing, Pari-Mutuel Wagering and Breeding Law §§ 1017 and 1008. (*Anderson v Regan,* 53 NY2d 356; *Weiss v City of New York,* 95 NY2d 1.) IV. The Appellate Division, Third Department correctly held the New York State Racing and Wagering Board's "maintenance of effort" determination is contrary to Racing, Pari-Mutuel Wagering and Breeding Law

§ 1017-a (2) (a). (*Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 62 NY2d 539; *Matter of Madison-Oneida Bd. of Coop. Educ. Servs. v Mills,* 4 NY3d 51; *Matter of Moran Towing & Transp. Co. v New York State Tax Commn.,* 72 NY2d 166; *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451; *Matter of Jansen Ct. Homeowners Assn. v City of New York,* 17 AD3d 588; *Matter of New York Botanical Garden v Board of Stds. & Appeals of City of N.Y.,* 91 NY2d 413; *Seittelman v Sabol,* 91 NY2d 618; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York,* 41 NY2d 205; *Longines-Wittnauer Watch Co. v Barnes & Reinecke,* 15 NY2d 443; *Majewski v Broadalbin-Perth Cent. School Dist.,* 91 NY2d 577.)

*Michael A. Cardozo, Corporation Counsel,* New York City (*Susan Choi-Hausman, Pamela Seider Dolgow, Ira H. Block* and *June R. Buch* of counsel), for New York City Off-Track Betting Corporation, appellant-respondent. I. The Appellate Division correctly annulled the New York State Racing and Wagering Board's maintenance of effort determination. (*People v Robinson,* 95 NY2d 179; *Community Bd. 7 of Borough of Manhattan v Schaffer,* 84 NY2d 148; *Parochial Bus Sys. v Board of Educ. of City of N.Y.,* 60 NY2d 539.) II. The Appellate Division correctly annulled the New York State Racing and Wagering Board's February 23, 2005 dark day determination. (*People v Ercole,* 308 NY 425; *People v Realmato,* 294 NY 45; *Matter of Notre Dame Leasing v Rosario,* 2 NY3d 459; *People v Mobil Oil Corp.,* 48 NY2d 192; *Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington,* 97 NY2d 86; *Matter of Orens v Novello,* 99 NY2d 180; *Matter of Branford House v Michetti,* 81 NY2d 681; *Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.,* 45 NY2d 471; *Anderson v Regan,* 53 NY2d 356; *Parochial Bus Sys. v Board of Educ. of City of N.Y.,* 60 NY2d 539.) III. The Appellate Division erred in affirming so much of the judgment as confirmed the New York State Racing and Wagering Board's separate calculation determination. (*Matter of Yolanda D.,* 88 NY2d 790; *Matter of Bliss v Bliss,* 66 NY2d 382.) IV. The Appellate Division erroneously held that the New York State Racing and Wagering Board's determinations were not rules required to be adopted in accordance with the State Administrative Procedure Act. (*Matter of Cordero v Corbisiero,* 80 NY2d 771; *Matter of Alca Indus. v Delaney,* 92 NY2d 775; *Matter of Schwartfigure v Hartnett,* 83 NY2d 296; *People v Cull,* 10 NY2d 123; *Matter of Medical Socy. of State of N.Y. v Serio,* 100 NY2d 854; *Matter of New York City Tr. Auth. v New York State Dept. of Labor,* 88 NY2d 225; *Cubas*

*v Martinez,* 8 NY3d 611; *Matter of Elcor Health Servs. v Novello,* 100 NY2d 273; *Matter of Burns v New York State Off. of Vocational & Educ. Servs. for Individuals with Disabilities,* 233 AD2d 781, 89 NY2d 1002; *Allied Chem. v Niagara Mohawk Power Corp.,* 72 NY2d 271, 488 US 1005.)

*Powers & Santola, LLP,* Albany (*Michael J. Hutter* of counsel), *Neil H. Tiger,* Hauppauge, and *Stern & Rindner,* Goshen (*Mark D. Stern* of counsel), for Suffolk Regional Off-Track Betting Corporation and others, appellants-respondents. I. The New York State Racing and Wagering Board's determinations must be annulled because they constitute rules within the meaning of State Administrative Procedure Act § 102 (2) (a) (i) but were not promulgated in conformity with the rule-making requirements of State Administrative Procedure Act § 202 and article IV, § 8 of the State Constitution. (*Matter of Cordero v Corbisiero,* 80 NY2d 771; *Matter of New York State. Coalition of Pub. Empls. v New York State Dept. of Labor,* 60 NY2d 789; *Matter of Jones v Smith,* 64 NY2d 1003; *Matter of Schwartfigure v Hartnett,* 83 NY2d 296; *Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health,* 66 NY2d 948; *People v Cull,* 10 NY2d 123; *Matter of Alca Indus. v Delaney,* 92 NY2d 775; *Matter of New York City Tr. Auth. v New York State Dept. of Labor,* 88 NY2d 225; *Matter of Gill v New York State Racing & Wagering Bd.,* 11 Misc 3d 1068[A], 2006 NY Slip Op 50433[U], 50 AD3d 494; *Matter of UCP-Bayview Nursing Home v Novello,* 2 AD3d 643.) II. The Appellate Division correctly annulled the New York State Racing and Wagering Board's maintenance of effort determination. III. The Appellate Division correctly annulled the New York State Racing and Wagering Board's February 23, 2005 dark day determination. IV. The Appellate Division erred in affirming so much of the judgment as confirmed the New York State Racing and Wagering Board's separate calculation determination.

### OPINION OF THE COURT

Chief Judge KAYE.

At the core of this litigation—with the Off-Track Betting Corporations (OTBs) on one side, and the State Racing and Wagering Board and state harness racing tracks on the other side—are questions of statutory interpretation. We begin with a brief history of the relevant sections of the Racing, Pari-Mutuel Wagering and Breeding Law and the present controversy.

Prior to 1970, New York permitted wagering on horse racing only at its thoroughbred and harness tracks, leaving (as

Supreme Court observed) "a lucrative and illegal niche for local bookies, who took bets from those individuals who wished to gamble on horse racing but who were unable or unwilling to travel to the race track to place their wagers." When off-track betting was thereafter authorized, its popularity depleted attendance at the tracks and threatened their viability. To redress the situation, the Legislature in 1973 created seven regional OTBs[1] to administer off-track wagering and required them to pay a "state tax," a portion of which went to the regional harness tracks and nonprofit racing associations (L 1973, ch 346, § 4, as amended). The intention of the Legislature was:

> "to derive from such betting . . . a reasonable revenue for the support of government, and to prevent and curb unlawful bookmaking and illegal wagering on horse races. It is also the intention of this article to ensure that off-track betting is conducted in a manner compatible with the well-being of the horse racing and breeding industries in this state, which industries are and should continue to be major sources of revenue to state and local government and sources of employment for thousands of state residents." (Racing, Pari-Mutuel Wagering and Breeding Law § 518.)

In 1984, the Legislature authorized the simulcasting, or telecasting, of horse races conducted in the state for the purposes of pari-mutuel wagering (Racing, Pari-Mutuel Wagering and Breeding Law § 1001 [a]). That again was a perceived threat to the financial stability of the regional harness tracks, leading to new legislation requiring OTBs to pay them commissions on the simulcast wagers placed at OTB facilities.

Between 1984 and 2003, simulcasting of thoroughbred races was prohibited between 7:30 P.M. and midnight—evenings were traditionally reserved for harness racing. In 2003, however, the Legislature allowed simulcast licensees to broadcast, and accept bets on, thoroughbred races conducted after 7:30 P.M. from anywhere in the world. Again perceiving an adverse impact on nighttime harness racing, the Legislature provided for "maintenance of effort" payments, requiring OTBs that simulcast nighttime thoroughbred racing, every year after 2002, to guarantee to their regional harness tracks minimum payments based upon

---

**1.** Currently, there are six regional OTBs: New York City, Suffolk, Nassau, Capital District, Catskill and Western.

the commissions those tracks received before the nighttime thoroughbred simulcasts were permitted.

That requirement engendered two of the statutory questions now before us: first, can the OTBs credit commissions derived from *daytime* harness racing against the maintenance of effort payments and second, are those payments to be made on a regional, or track-by-track, basis.

The third statutory issue before us involves so-called "dark day" payments. "Dark days" occur when the State Racing Association is not conducting a thoroughbred race meeting, and no licensed harness track is accepting wagers on or displaying the signal of any thoroughbred track. On dark days, simulcast licensees can broadcast out-of-state thoroughbred races, but they must make payments to the harness tracks (which are not open for business that day) in accordance with a statutory formula (Racing, Pari-Mutuel Wagering and Breeding Law § 1017).[2] From 1997 through 2003, all OTBs made dark day payments to their respective regional harness tracks, but in 2004 New York City OTB (NYC OTB) stopped payment on the ground that the statute required the tracks, not OTBs, to make such payments to one another.

Seeking clarification on maintenance of effort and dark day payments, the OTBs brought their claims to the State Racing and Wagering Board, which in February 2005 rejected their arguments. The Board concluded that OTBs cannot credit commissions derived from daytime harness racing against the maintenance of effort payment; that Racing, Pari-Mutuel Wagering and Breeding Law § 1017-a required calculation of the maintenance of effort payment on a track-by-track (not regional) basis; and that Racing, Pari-Mutuel Wagering and Breeding Law § 1017 required OTBs to make dark day payments to their respective regional harness tracks. Five of the State's six regional OTBs (Western did not join) brought CPLR article 78 proceedings challenging the Board's determinations. After consolidating the proceedings, Supreme Court dismissed the petitions, including a new claim that the Board's determinations were rules not properly promulgated under the State Administrative Procedure Act. On appeal, the Appellate Division modified Supreme Court's dismissal: while affirming the separate pay-

---

**2.** While the Legislature recently renumbered relevant sections of the Racing, Pari-Mutuel Wagering and Breeding Law, to maintain consistency we adhere to the statutory numbering used by Supreme Court and the Appellate Division in this case.

ment distribution and State Administrative Procedure Act determinations, the court reversed on the maintenance of effort and dark day payments issues (47 AD3d 133 [2007]). The Board and the harness tracks moved for leave to appeal, the OTBs cross-moved, and we granted leave to appeal to all parties (10 NY3d 706 [2008]). We now conclude that the Board and harness tracks, not the OTBs, were correct in their reading of the relevant statutory sections.

### Analysis

Given the growth in codification of the law over recent decades, the principles governing the Court's statutory review have by now been extensively articulated. First and foremost, it is our role to implement the intent of the Legislature (*Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006]). Deference to administrative agencies charged with enforcing a statute is not required when an issue is one of pure statutory analysis (*Matter of Astoria Gas Turbine Power, LLC v Tax Commn. of City of N.Y.*, 7 NY3d 451, 455 [2006]). Even if no deference is owed to an agency's reading of a statute, a court can nevertheless defer to an agency's definition of a term of art contained within a statute (*Matter of Trump-Equitable Fifth Ave. Co. v Gliedman*, 57 NY2d 588, 595 [1982]). Against this backdrop, we turn to the specific issues in controversy.

Maintenance of Effort Payments. Starting in May 2003, when OTBs were permitted to accept wagers on simulcast nighttime out-of-state thoroughbred races, Racing, Pari-Mutuel Wagering and Breeding Law § 1017-a (2) (a) required them to make maintenance of effort payments to their regional harness tracks, to hold the tracks harmless from the new competition.

Section 1017-a (2) (a) provides:

> "Any off track betting corporation which engages in accepting wagers on the simulcasts of thoroughbred races from out-of-state or out-of-country as permitted under subdivision one of this section shall submit to the board, for its approval, a schedule of payments to be made in any year or portion thereof, that such off track corporation engages in nighttime thoroughbred simulcasting. In order to be approved by the board, the payment schedule shall be identical to the actual payments and distributions of such payments to tracks and purses made by such off

track corporation pursuant to the provisions of section [1016] of this article during the year [2002], as derived from out-of-state harness races displayed after 6:00 P.M. If approved by the board, such scheduled payments shall be made from revenues derived from any simulcasting conducted pursuant to this section and section [1016] of this article."

The apparent tension between the final two sentences of this subdivision gives rise to the present dispute. The Board and the tracks rely on the penultimate sentence in urging that OTBs cannot credit commissions from daytime harness racing against their maintenance of effort payments, and that payment must be identical to actual payments during 2002 as derived from out-of-state harness races displayed after 6:00 P.M. The OTBs, in urging that they can credit commissions from daytime racing, rely on the last sentence, directing that scheduled payments be made from revenues derived from *any* simulcasting conducted pursuant to this section and section 1016 of this article.

■ Here, the trial court and Appellate Division understandably divided, each pointing to the plain language of the statute.[3] Reading the provision as a whole, however, and taking into account the Legislature's purpose in requiring maintenance of effort payments, we conclude that the correct interpretation of this less-than-perfectly-clear subdivision is that given by the trial court.

The penultimate sentence establishes the baseline, or minimum, amounts that OTBs must pay to harness tracks for the privilege of simulcasting evening thoroughbred racing: at least the same level of payments received in 2002 from *evening* simulcasting. The final sentence must then be read to concern only the total pool of dollars from which the mandated amounts can be paid. The amount of daytime harness racing commissions OTBs pay to a harness track is irrelevant to determine whether the OTB met its promised nighttime revenues threshold; allowing OTBs to credit daytime harness racing commissions against the mandated maintenance of effort payments would satisfy neither the words nor the objective of the statute.

"Separate Payment" Distribution. The OTBs urge that the maintenance of effort payments are to be made on a regional,

---

**3.** The trial court additionally accorded deference to the Board's reading of the statute it is empowered to oversee. What is at issue, however, is a matter of statutory interpretation, not deference to the operational expertise of the administrative agency.

rather than track-by-track, basis. They argue that Racing, Pari-Mutuel Wagering and Breeding Law § 1017-a (2) (a) incorporates the payment scheme of section 1016, which distributes commissions from harness racing simulcasting on a regional basis. The Board and the tracks, by contrast, contend that the maintenance of effort payment should be on a track-by-track basis because section 1017-a requires that the payment be *"identical to the actual payments* and distributions of such payments *to tracks* and purses made by such off track corporation" (emphasis supplied).

We agree with the Board and the tracks that the plain text requires that the maintenance of effort payments be distributed on a track-by-track basis. As the Appellate Division noted, had the Legislature intended that the maintenance of effort payment be made on a regional basis, it could have used the same language as that used in the very next paragraph:

> "During each calendar year, to the extent, and at such time in the event, that aggregate statewide wagering handle after 7:30 P.M. on out-of-state and out-of-country thoroughbred races exceeds [$100,000,000], each off track betting corporation conducting such simulcasting shall pay to its regional harness track or tracks, an amount equal to [2%] of its proportionate share of such excess handle. In any region where there are two or more regional harness tracks, such [2%] shall be divided between or among the tracks in a proportion equal to the proportion of handle on live harness races conducted at such tracks during the preceding calendar year" (Racing, Pari-Mutuel Wagering and Breeding Law § 1017-a [2] [b]).

Track-by-track payments thus are required by the explicit language of the statute. That conclusion is underscored by the contrasting language of the immediately ensuing paragraph and indeed by the very purpose of the statute—to hold each track harmless from the potentially negative impact of permitting OTBs to simulcast nighttime out-of-state thoroughbred races.

Dark Day Payments. As the foregoing discussion demonstrates, the Racing, Pari-Mutuel Wagering and Breeding Law remains "an imbroglio, being born out of the union of diverse racing industry interests and legislative compromise" (*Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.*, 45 NY2d 471, 476 [1978]). That observation is nowhere more

evident than in Racing, Pari-Mutuel Wagering and Breeding Law § 1017, which governs distribution of wagers placed on dark days at facilities that simulcast out-of-state races.

Section 1017 itself contains one subdivision, two paragraphs, six subparagraphs, 22 clauses, six subclauses, and six tables listing percentages due for state payments (with varying percentages depending on the type of bet, race and facility). Racing, Pari-Mutuel Wagering and Breeding Law § 1017 (1) (b) (5) (E) and (6) (F) provide in relevant part:

> "On days when a non-profit racing association is not conducting a race meeting and when a licensed harness track is neither accepting wagers nor displaying the signal from an in-state thoroughbred corporation or association or an out-of-state thoroughbred track:

> "(i) Such licensed regional harness track shall receive in lieu of any other payments on wagers placed at off-track betting facilities outside the special betting district on races conducted by an in-state thoroughbred racing corporation, two and eight-tenths percent on regular and multiple bets during a regional meeting and one and nine-tenths percent of such bets if there is no regional meeting and four and eight-tenths percent on exotic bets on days on which there is a regional meeting and three and four-tenths percent of such bets if there is no regional meeting.

> "(ii) Such licensed regional harness track shall receive one and one-half per centum on total regional handle on races conducted at out-of-state or out-of-country thoroughbred tracks."

From 1997 through 2003, without apparent problem, OTBs made payments to tracks in their region that did not open for business on dark days. Then in 2004, NYC OTB stopped making such payments. It claimed that the headings of section 1017 (1) (b) (5) and (6) required dark day payments only of "facilities licensed in accordance with section [1007] of this article," and OTBs do not operate facilities under section 1007. Racing, Pari-Mutuel Wagering and Breeding Law § 1007 indeed does provide for simulcast licenses from track to track, not off-track branch offices or simulcast theaters.

■ Those headings, however, stand in marked contrast to the headings of section 1017 (1) (b) (3) and (4) that govern the dis-

tribution of wagers placed at "facilities licensed in accordance with sections [1008] and [1009]"—meaning OTB branch offices and simulcast theaters. According to the OTBs, the statutory headers of subparagraphs (5) and (6) dictate that the tracks must simply pay one another. The Board and tracks claim that the body of the text, not the statutory headings, determines the meaning. Again, we agree with the Board and the tracks because the text's unambiguous language requires OTBs to make the dark day payments, as they apparently also believed for several years.

While a statute's heading may help in ascertaining the intent of an otherwise ambiguous statute, a heading cannot trump the clear language of the statute (see McKinney's Cons Laws of NY, Book 1, Statutes § 123 [b]). Here, section 1017 specifies that dark day payments are a percentage of "total regional handle"—a term of art which the Board explained is used in the Racing, Pari-Mutuel Wagering and Breeding Law in relation to the concept of payments by off-track betting corporations to tracks; harness tracks do not have regions but rather are located for defined purposes within established off-track betting regions. Under the OTBs' reading, if a region has only one track and it remains closed on the dark day, it will not receive any commissions because only tracks can contribute to regional handle. We conclude that, applying the Board's definition of regional handle (meaning an OTB's commissions), the statute makes sense: if a track remains closed on a dark day, then it will receive 1.5% of the total regional handle made by the OTB.

Additionally, the statute directs "off-track betting facilities"—a term used elsewhere in the Racing, Pari-Mutuel Wagering and Breeding Law to apply only to OTBs (see Racing, Pari-Mutuel Wagering and Breeding Law § 520 [1]; § 532 [1], [3-a]; § 901 [2] [b]; § 907 [1] [e]; § 1016 [3] [b])—to make dark day payments to regional harness tracks. Finally, the purpose of dark day payments is to compensate harness tracks when the OTBs—competitors to harness tracks—simulcast out-of-state thoroughbred races. Requiring OTBs to pay the 1.5% of regional handle to harness tracks in their region that remain closed on the dark day implements that statutory purpose.

State Administrative Procedure Act. The State Constitution, as well as the State Administrative Procedure Act, mandates the procedures that must be followed for promulgation of rules and regulations. Excluded from these requirements are "interpretive statements and statements of general policy which in

themselves have no legal effect but are merely explanatory" (State Administrative Procedure Act § 102 [2] [b] [iv]). A rule or regulation, by contrast, is "a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers" (*Matter of Roman Catholic Diocese. of Albany v New York State Dept. of Health*, 66 NY2d 948, 951 [1985]).

The OTBs argue that the Board's maintenance of effort, separate payment distribution and dark day payment determinations were fixed, general principles to be applied without regard to other facts and circumstances relevant to the regulatory scheme of the Racing, Pari-Mutuel Wagering and Breeding Law by imposing financial obligations upon the OTBs. We agree with both Supreme Court and the Appellate Division that the Board here promulgated no rules or regulations, but rather interpreted the requirements of the statutes in issue, which we have now independently construed.

Accordingly, the order of the Appellate Division should be modified, with costs to respondents-appellants, by reinstating the judgment of Supreme Court, and, as so modified, affirmed.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order modified, etc.