■ In the Matter of CATSKILL REGIONAL OFF-TRACK BETTING CORPORATION, Appellant, v NEW YORK STATE RACING AND WAGERING BOARD et al., Respondents. [911 NYS2d 191]—

Lahtinen, J. Appeal from a judgment of the Supreme Court (Kramer, J.), entered June 2, 2009 in Schenectady County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent New York State Racing and Wagering Board granting a simulcast license to respondent Nevada Gold-Tioga Downs, Inc.

The underlying facts are set forth in our prior decision (*Matter of Catskill Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd.*, 56 AD3d 1027 [2008]). Briefly, petitioner contends that respondent New York State Racing and Wagering Board acted arbitrarily and exceeded its authority by the manner in which it licensed simulcasting of horse races at a harness track owned by respondent Tioga Downs Racetrack, LLC and operated by respondent Nevada Gold-Tioga Downs, Inc. (hereinafter NGTD). Supreme Court dismissed the petition. Petitioner appeals.

Petitioner first contends that the Board violated Racing, Pari-Mutuel Wagering and Breeding Law § 1003 by considering NGTD's application for a simulcast license at a time when NGTD had not yet been licensed to conduct horse racing and wagering. The statute provides that "[a]ny racing association or corporation or regional off-track betting corporation, authorized to conduct pari-mutuel wagering under this chapter, desiring to display the simulcast of horse races on which pari-mutuel betting shall be permitted . . . may apply to the [B]oard for a license so to do" (Racing, Pari-Mutuel Wagering and Breeding Law § 1003 [1] [a]). The developers who eventually formed NGTD initially submitted applications at the same time for both a license for a harness track with pari-mutuel wagering and a license permitting simulcasting of other races. While it would have been inconsistent with the statute for a simulcast license to have been issued prior to the issuing of a track and pari-mutuel wagering license, such order of issuing licenses did

not occur here. The developers received a temporary conditional track license in April 2006, which they surrendered when NGTD was formed soon thereafter. On May 25, 2006, the Board issued NGTD a temporary conditional track license and, subsequently, on May 30, 2006, NGTD submitted its simulcast application to the Board. A temporary conditional simulcast license was issued to NGTD by the Board on June 5, 2006. Hence, the Board acted in compliance with the statute.

Next, petitioner asserts that the Board had no statutory authority to issue a simulcast license that was temporary and conditional. We are unpersuaded. Racing, Pari-Mutuel Wagering and Breeding Law § 1003 (5) provides that harness racing simulcast licenses "shall be issued in accordance with and subject to the provisions governing licenses for participants and employees in . . . article three of this chapter." Temporary licenses with conditions set by the Board are authorized in article three (see Racing, Pari-Mutuel Wagering and Breeding Law § 307 [7]).

Petitioner further argues that granting NGTD a simulcast license reduced petitioner's revenue and, thus, the license should not have been granted. In support of this argument, petitioner urges that Racing, Pari-Mutuel Wagering and Breeding Law § 1000 prohibits the licensing of any simulcasting that negatively impacts the operations of an off-track betting corporation. A paramount legislative intent in authorizing off-track betting was generating governmental revenue (see Matter of Suffolk Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd., 11 NY3d 559, 565 [2008]). When the Legislature first authorized simulcast wagering on an experimental and temporary basis (see L 1984, ch 363, §§ 14, 15), it expressed its intent to protect revenue generated by regional off-track betting corporations while also seeking to promote growth in the industry resulting in additional revenue (see Racing, Pari-Mutuel Wagering and Breeding Law § 1000). The language upon which petitioner relies is set forth in a section of the statute that repeatedly refers to an experimental phase, which has long since passed (see L 1990, ch 346, § 42). In any event, the overall statutory language reflects a balancing of interests, with an emphasis on raising governmental revenue. The record in this proceeding reveals that, although petitioner saw a decrease in revenue as a result of the Board's licensing of simulcasting at NGTD, overall in the region simulcast wagering (and concomitantly revenue) increased considerably. The Board's action was neither violative of a pertinent statutory provision nor arbitrary.

The alternative ground urged by the Board for affirming is academic.

Cardona, P.J., Mercure, Spain and Garry, JJ., concur. Ordered that the judgment is affirmed, without costs.