OPINION OF THE COURT
Mario F. Mattei, J.
On September 17, 2014, the defendant pleaded guilty to sexual abuse in the first degree (Penal Law § 130.65 [3]) and was sentenced to one year in jail.
This matter has come before the court for a determination pursuant to Correction Law § 168-n (1), (2) and (3). The court has received from the Board of Examiners of Sex Offenders and the District Attorney recommendations as to a level of notification. The defendant and his counsel have been provided with a copy thereof. The defendant has submitted a response which includes a recommendation on his behalf.
Both sides presented evidence at a Sex Offender Registration Act (SORA) hearing held on September 23, 2016. The defendant was present with counsel.
For the reasons stated herein, the defendant is designated a sexually violent offender and a risk level 3.
Facts*
The defendant was a camp counselor at a children’s day camp. In August 2013, the defendant and children from the camp were on a bus trip when the defendant arranged for child one to sit with him in the back of the bus. He told her to open her legs and he touched her vagina above her clothes. He put his hand down the back of her pants and touched her buttocks. He then made the girl touch his penis above his clothes. She was 10 years old. The incident was reported to the police and the defendant was arrested.
A second victim came forward after the story of the defendant’s arrest was published in a local newspaper. Child two said she attended camp where the defendant worked and that on several occasions in 2012 the defendant touched her inner legs and thighs while at the movies on camp trips. He also touched her inner legs and thighs on a bus trip. Child two was eight years old when the abuse started.
*1047 After being arrested it was discovered that the defendant possessed child pornography on his computer. A search warrant was executed and six sexually explicit videos depicting children under 16 engaging in various sexual activities were recovered.
The defendant was indicted and charged with approximately 30 crimes.
Special Designation
The People and the Board have recommended that the defendant be designated a sexually violent offender based upon his conviction for Penal Law § 130.65. The defendant has not disputed this designation.
Presumptive Risk Level
The Board and People contend that the defendant is a presumptive risk level 3 and is therefore a high risk to reof-fend. The Board and the People assess the defendant with 130 points as follows:
10 points—Sexual contact with victim—contact under clothing (risk factor [RF] 2);
30 points—Number of victims—three or more (RF 3);
20 points—Duration of offense conduct with victim (RF 4);
30 points—Age of victim—10 or less (RF 5);
20 points—Relationship with victim (RF 7);
5 points—Prior history (RF 9); and
15 points—Supervision—release without supervision (RF 14).
The defendant contests the assessment of points under risk factors 2, 4 and 9, contending that the defendant is a presumptive risk level 2.
Findings
1. The People have shown by clear and convincing evidence that there were three or more victims (RF 3), that at least one victim was 10 years old or younger (RF 5), that there was a special relationship between the victim and the offender (RF 7), and that the defendant is released without supervision (RF 14).
The defendant has not contested the points assessed in these risk factors.
*1048 2. The People have proved by clear and convincing evidence that the defendant had sexual contact with the victim under her clothing.
The grand jury minutes indicate that on at least one occasion the defendant had contact underneath the clothing of child one. The evidence indicates that after the defendant isolated child one in a seat on the back of a bus, he touched her vagina above her clothes, and made her touch his penis over his clothes. Then, according to her testimony, the defendant, “put his hands down my pants on my butt.” A plain reading of the testimony indicates that he touched her buttocks.
The defendant contends that points should not be assessed in this category for touching “underneath” the victim’s clothing because there is no indication that the victim did not have underwear on. The defendant contends that “under clothing” does not mean under the clothing one normally wears to conceal their body, but rather necessitates that the contact be “skin to skin.” But the grand jury testimony, which is reliable hearsay, indicates that on at least one occasion the defendant actually touched the child’s skin; this is sufficient to meet the statutory requirement as well as refute the defendant’s arguments. But even if the grand jury testimony was not given its plain meaning, the defendant’s argument is not persuasive and flies in the face of proper statutory interpretation. In the context of a statute dealing with sex offenses, the Sex Offender Registration Act: Risk Assessment Guidelines and Commentary are instructive. The fact that the statute, the guidelines, and the commentary characterize the sexual contact as “under or over clothing,” for the assessment of enhanced points, indicates that the egregious conduct of the offender is accomplished when he goes to the extreme of reaching under clothing which is apparent to him, without regard to whether or not the victim is wearing underwear. “Courts are constitutionally bound to give effect to the expressed will of the legislature and the plain and obvious meaning of a statute is always preferred to any curious, narrow or hidden sense that nothing but a strained interpretation of legislative intent would discern” (Finger Lakes Racing Assn. v New York State Racing & Wagering Bd., 45 NY2d 471, 479-480 [1978] [citation omitted]). Unlike the offender who rubs against someone on a crowded train, the intent of the offender reaching under a victim’s clothes is clear to both parties—he is attempting to have intimate sexual contact with the victim. The statute is *1049 silent as to whether contact under the clothing requires “skin to skin” contact for points to be assessed. “[I]t has long been held that where a statute describes the particular situations in which it is to apply, ‘an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded’ ” (Golden v Koch, 49 NY2d 690, 694 [1980], citing McKinney’s Cons Laws of NY, Book 1, Statutes § 240). Since the statute does not require or specify that “skin to skin” contact is necessary for the assessment of additional points, it is not proper to interpret the statute as if that is a necessary element. “Skin to skin” contact is not required for the assessment of points under risk factor 2; an offender who reaches under the clothing of a victim is properly assessed points, as it is his action, without regard to the dress of the victim, which is the dangerous conduct. Therefore 10 points will be assessed under risk factor 2.
3. The People have proved by clear and convincing evidence that the defendant abused the female child more than three times over the course of at least two weeks.
A close reading of the grand jury minutes indicates that the defendant abused child two at least six times on the bus. Camp was in session Monday to Friday, so six times, at a minimum, would stretch the abuse out into two weeks.
Additionally, the same girl went to the movies with the defendant twice a week. He abused her, at a minimum, at least once a week. The child indicated what she was wearing when she was abused at the movies—and she indicated that she wore at least four different outfits. Even without assuming she never wore the same outfit twice, the defendant abused her at least four times, which meets the requirement for duration of offense if it occurred once a week for four weeks or on four consecutive trips to the movies.
4. The People have not shown by clear and convincing evidence that the defendant’s prior out-of-state convictions constitute crimes in New York.
The People have not shown by clear and convincing evidence that the defendant’s out-of-state convictions are crimes in New York state.
The defendant is assessed with 125 points and is therefore a presumptive risk level 3.
Departure Requests
The defendant seeks a downward departure to risk level 2. The defendant argues that the assessment of points for the de *1050 fendant’s release without supervision overassesses his risk to reoffend. The defendant requests that the court grant a downward departure to risk level 2, asserting that he is a moderate risk to reoffend.
A defendant seeking a downward departure from the presumptive risk level under the SORA Guidelines has the initial burden of (1) identifying, as a matter of law, an appropriate mitigating factor, namely, a factor which tends to establish a lower likelihood of reoffense or danger to the community and is of a kind, or to a degree, that is otherwise not adequately taken into account by the guidelines, and (2) establishing the facts in support of its existence by a preponderance of the evidence (Correction Law § 168 et seq.; see People v Gillotti, 23 NY3d 841 [2014]; People v Torres, 124 AD3d 744 [2d Dept 2015], lv denied 25 NY3d 906 [2015]).
The defendant’s request for a downward departure is denied.
The defendant’s argument that scoring points in risk factor 15 overestimates the defendant’s risk of reoffense is not persuasive, since the assessment of points for being released without supervision is clearly a part of the risk assessment instrument and therefore not the proper basis for a downward departure.
The defendant’s argument, focusing on a single category as being the proverbial tipping point in over assessment, is contrary to the intent of the statute.
“[T]he Board opted to create an objective assessment instrument that would provide a risk level combining risk of reoffense and danger posed by a sex offender. As required by the Act, the instrument includes factors related to the offender’s current offense, his criminal history, his post-offense behavior . . . and his planned release environment (Correction Law § 168-1 [5]). It assigns numerical values to each risk factor . . . The presumptive risk level is then calculated by adding the points that the offender scores in each category” (SORA: Risk Assessment Guidelines and Commentary, General Principles [3] at 3 [2006]).
Allowing the defendant to assert that a particular risk factor for which points are scored leads to an overall score which overassesses the defendant’s likelihood to reoffend, necessitating a downward departure, would effectively negate that risk factor as a factor in the risk assessment equation. This is *1051 precisely why a departure request can only be granted if the court “concludes that there exists an aggravating or mitigating factor of a kind, or to a degree, that is otherwise not adequately taken into account by the guidelines” (SORA: Risk Assessment Guidelines and Commentary, General Principles [6] at 4 [2006]; see also Correction Law § 168-1 [6]; People v Johnson, 11 NY3d 416 [2008]; People v Wyatt, 89 AD3d 112 [2d Dept 2011], lv denied 18 NY3d 803 [2012]; People v Gillotti, 23 NY3d 841 [2014]). Tellingly, if the defendant was not assessed any points for risk factor 15, rather than the 15 he is assessed, his score would be 110, which is still a presumptive risk level 3. So it is hard to give credence to the argument that the defendant is overassessed by scoring points in one particular category since if no points were scored his presumptive risk level would not change. But more than that, this logic would allow a defendant to use a negative aspect, the assessment of points, as a positive for him. By not contesting the points, but claiming that those same points necessitate a downward departure, the defendant is trying to use a negative finding as a sword rather than a shield. This is not logical or consistent with the goals and ideas behind the legislation. “An offender who is released without . . . supervision is assessed points in this category” (SORA: Risk Assessment Guidelines and Commentary, Specific Guidelines [Factor 14: Supervision] at 17). The level of supervision/no supervision is an objective consideration (see People v Oliver, 137 AD3d 1236 [2d Dept 2016], lv denied 27 NY3d 909 [2016]; People v Callendar, 127 AD3d 1153 [2d Dept 2015], lv denied 25 NY3d 913 [2015]; People v Lewis, 37 AD3d 689 [2d Dept 2007], lv denied 8 NY3d 814 [2007]; People v English, 60 AD3d 923 [2d Dept 2009]; People v Leeks, 43 AD3d 1251 [3d Dept 2007]; People v Miller, 77 AD3d 1386 [4th Dept 2010], lv denied 16 NY3d 701 [2011]).
The defendant’s argument, more properly framed, is that the points lead to a presumptive risk level which the court is free to deviate from if it finds that the score as an entirety overas-sesses the defendant’s risk level. As a matter of discretion, the court will not grant a downward departure.
The defendant possessed child pornography. Unlike many cases involving the possession of child pornography, this defendant progressed into touching and abusing real children. His conduct was predatory in nature. He used his authority as a counselor to set up situations where he could isolate his victims to sexually abuse them. He preyed upon one of the most vulnerable groups in our society, young female children.
*1052 “Offenders who target young children as their victims are more likely to reoffend (Abel et al. 1993; Weinrott & Saylor 1991). Moreover, such offenders pose a heightened risk to public safety since young children lack the physical strength to resist and can be more easily lured into dangerous situations than adults” (SORA: Risk Assessment Guidelines and Commentary, Specific Guidelines [Factor 5: Age of Victim] at 11 [2006]).
The defendant also had more than one actual victim whom he abused. While the number of victims is something taken into account by the risk assessment instrument, the underlying finding in support of that category is worth noting. According to the guidelines, “[t]he existence of multiple victims is indicative of compulsive behavior and is, therefore, a significant factor in assessing the offender’s risk of reoffense and dangerousness (Rice & Harris 1995; Abel et al. 1993; Toch & Adams 1989; Abel et al. 1987)” (SORA: Risk Assessment Guidelines and Commentary, Specific Guidelines [Factor 3: Number of Victims] at 10 [2006]). And indeed, in this case the compulsive nature and likelihood of reoffense is apparent in that the defendant’s abuse of the two children was more than a year apart from each other. This significant factor, considered with the facts and circumstances of this case, is another independent reason to deny a downward departure.
Since the request for a downward departure is denied there is no reason to address the People’s position that a finding of risk level 2 would necessitate an upward departure to correctly assess the defendant’s likelihood of reoffense.
The defendant’s remaining contentions are either adequately taken into account by the SORA Guidelines, not proved by a preponderance of the evidence, or are unavailing to the court.
Conclusion
The People have proved by clear and convincing evidence that the defendant is a high risk to reoffend; the defendant has not proved by a preponderance of the evidence that a downward departure would result in an accurate assessment of the defendant’s likelihood of reoffense; and a downward departure is not warranted as a matter of law or discretion.
Therefore, it is hereby ordered, that the defendant is a sexually violent offender; and it is further ordered, that the defendant is a risk level 3.

 Based upon the reliable evidence (see People v Mingo, 12 NY3d 563 [2009]).