■ DEBRA A. MALONEY et al., Appellants, v DOUGLAS H. STONE, Defendant, and MANUFACTURERS AND TRADERS TRUST COMPANY (Successor by Merger to CENTRAL TRUST COMPANY) et al., Appellants, and BOYLAN, BROWN, CODE, FOWLER, RANDALL & WILSON et al., Respondents. (Appeal No. 1.) [601 NYS2d 731] —Judgment unanimously affirmed without costs. Memorandum: Plaintiffs, Debra Ann Maloney and Gordon Jones, and defendants Roxane Fagan, Kelly N. Shea, Landmark Group of Brighton, Inc. (Landmark) and Manufacturers and Traders Trust Company (MTT) appeal from an order entered December 27, 1991, which granted the cross motion of defendants Boylan, Brown, Code, Fowler, Randall & Wilson (Boylan, Brown) and Richard A. Palumbo for summary judgment dismissing the complaint and cross claims against them. MTT also appeals from the judgment entered upon that order. Because that judgment subsumes the prior order, we treat the

appeals of plaintiffs and defendants Fagan, Shea and Landmark as one taken from the judgment (appeal No. 1) *(see, Hughes v Nussbaumer, Clarke & Velzy,* 140 AD2d 988; *Chase Manhattan Bank v Roberts & Roberts,* 63 AD2d 566, 567; *see also,* CPLR 5501 [a] [1]). Finally, defendants Fagan, Landmark and MTT appeal from an order entered March 3, 1992, which granted plaintiffs' motion for summary judgment on the issue of liability against MTT, Fagan and Landmark and denied MTT's cross motion for partial summary judgment on the issue of liability against Fagan and Landmark (appeal No. 2).

Supreme Court properly granted summary judgment against MTT. Contrary to its contention, MTT is not entitled to the protection of General Business Law § 359-s. That section is part of the Uniform Act for Simplification of Fiduciary Security Transfers, which was designed "to render unnecessary the burdensome documentation which had been required by the transfer agent" because prior law imposed "on issuers of securities and on their transfer agents a duty to inquire into the rightfulness of security transfers" (Prefatory Note, Uniform Act for Simplification of Fiduciary Security Transfers, 7B ULA, at 691, 692). The main purpose "would be largely defeated if the bottleneck were merely moved from the office of the transfer agent to the bank or broker's office. See 3 Scott, Trusts §§ 297.6, 326.1, 326.2 (2d ed. 1956), which might lead banks and brokers to require burdensome documentation. Accordingly, Section 7 deals with the liability of third persons for participation in breach of fiduciary duty" (id., at 692).

Section 7 of the Uniform Act was enacted verbatim as General Business Law § 359-s. It is entitled "Non-liability of third persons" and provides in subdivision (a): "No person who participates in the acquisition, disposition, assignment or transfer of a security by or to a fiduciary including a person who guarantees the signature of the fiduciary is liable for participation in any breach of fiduciary duty by reason of failure to inquire whether the transaction involves such a breach unless it is shown that he acted with actual knowledge that the proceeds of the transaction were being or were to be used wrongfully for the individual benefit of the fiduciary or that the transaction was otherwise in breach of duty."

In a letter to the Governor, the Director of Research of the Law Revision Commission wrote that a prior version of the

statute "was at least open to the construction that a person buying the security from the fiduciary or taking it as a pledge for the fiduciary's personal obligation was also protected from liability. The possibility of this interpretation seems to be excluded by the language of the present bill (proposed new section 359-s) which speaks of the person 'participating' in the acquisition, disposition, assignment or transfer, and of liability for such participation" (Bill Jacket, L 1959, ch 150, at 20).

The rules of statutory construction lead to the same conclusion. The heading of section 359-s, "Non-liability of third persons", may be used in resolving any ambiguity in the meaning of the statute (see, McKinney's Cons Laws of NY, Book 1, Statutes § 123 [b]). Here, the bank in receiving the securities as pledges was not a "third person" but was a party to the transfer. By accepting the stock security as a pledge it became a purchaser of the stock (see, Uniform Commercial Code § 1-201 [32] [defining "purchase" as including taking by "pledge"]).

Article 8 of the Uniform Commercial Code governs the purchase of investment securities. Section 8-304 (3) of that article provides that, if the purchaser of an investment security "has knowledge that the proceeds are being used or that the transaction is for the individual benefit of the fiduciary or otherwise in breach of duty, the purchaser is charged with notice of adverse claims." Uniform Commercial Code § 8-304 was enacted after General Business Law § 359-s and, insofar as there may be an irreconcilable conflict between the two, the later law controls (see, McKinney's Cons Laws of NY, Book 1, Statutes § 391). "Statutes should be given such construction that enables them to be reconciled, and if the court, without violating the established canons of interpretation, can construe two statutes so that they will be in harmony, such construction should be adopted" (id., at 557). General Business Law § 359-s can be construed to be in harmony with Uniform Commercial Code § 8-304. The first statute provides protection for *third parties* who participate in the transfer of securities but does not protect *purchasers* of securities from being "charged with notice of adverse claims" under Uniform Commercial Code § 8-304 (3).

It is undisputed that MTT knew that "the transaction [was] for the individual benefit of the fiduciary" because the securities were pledged and sold to satisfy the fiduciary's personal obligation to the bank. Thus, under Uniform Commercial Code

§ 8-304, the bank as purchaser was "charged with notice of adverse claims" of the beneficiaries.

MTT, recognizing that the fiduciary had no power to pledge the securities for his individual obligation, attempted to obtain, through the attorneys for the fiduciary, written authorizations from the beneficiaries. The signatures of the beneficiaries, however, were forged. The beneficiaries are entitled to assert the ineffectiveness of the "unauthorized" indorsement or instruction (which term includes a forgery) against the purchaser, MTT (see, Uniform Commercial Code § 1-201 [43]; § 8-311 [a]). Thus, MTT could derive no benefit from the forged authorizations.

Supreme Court properly granted summary judgment against Fagan and Landmark. Fagan's conduct in notarizing the forged signatures of plaintiffs was a substantial factor in the unauthorized sale of the trust assets, and we conclude that it was a proximate cause of plaintiffs' injury.

Supreme Court also properly granted summary judgment to Boylan, Brown and Palumbo, because Palumbo was not in a relationship with any of the parties sufficiently approaching privity so that liability for his representations could attach (see, Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood, 80 NY2d 377, 382, rearg denied 81 NY2d 955).

Finally, we conclude that Supreme Court erred by failing to grant MTT's cross motion for partial summary judgment on the issue of liability against Fagan and Landmark. Fagan's conduct in notarizing the forged signatures without having seen plaintiffs was the proximate cause of MTT's injury, and Executive Law § 135 imposes liability upon her for that misconduct.

We modify the order entered March 3, 1992, therefore, by granting MTT partial summary judgment on the issue of liability against Fagan and Landmark. (Appeals from Judgment of Supreme Court, Monroe County, Siracuse, J.—Summary Judgment.) Present—Pine, J. P., Fallon, Boomer, Davis and Boehm, JJ.