# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**647**

**CA 11-01813**

PRESENT: CENTRA, J.P., FAHEY, PERADOTTO, CARNI, AND SCONIERS, JJ.

---

EMPIRE STATE CHAPTER OF ASSOCIATED BUILDERS
AND CONTRACTORS, INC., COUNTY OF ERIE, CHRIS
COLLINS, BUFFALO NIAGARA PARTNERSHIP INC.,
INNOVATIVE MECHANICAL SYSTEMS, INC., M.G.M.
INSULATION, INC., ALLEGHANY INDUSTRIAL
INSULATION CO., DANIEL J. BRINSKY AND DOUG
BYERLY, PLAINTIFFS-APPELLANTS,

V                                                    OPINION AND ORDER

M. PATRICIA SMITH, IN HER OFFICIAL CAPACITY
AS COMMISSIONER, NEW YORK STATE DEPARTMENT
OF LABOR, AND THOMAS P. DINAPOLI, IN HIS
OFFICIAL CAPACITY AS COMPTROLLER, STATE OF
NEW YORK, DEFENDANTS-RESPONDENTS.

---

PHILLIPS LYTLE LLP, BUFFALO (TIMOTHY W. HOOVER OF COUNSEL), FOR
PLAINTIFFS-APPELLANTS.

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (ALLYSON B. LEVINE OF
COUNSEL), FOR DEFENDANTS-RESPONDENTS.

---

Appeal from a judgment (denominated order) of the Supreme Court, Erie County (Joseph R. Glownia, J.), entered November 19, 2010. The judgment granted the motion of defendants to dismiss the complaint.

It is hereby ORDERED that the judgment so appealed from is modified on the law by denying defendants' motion to the extent that it sought dismissal of the complaint, reinstating the complaint insofar as declaratory relief was sought, and granting judgment in favor of defendants as follows:

It is ADJUDGED AND DECLARED that the 2008 amendments to the Wicks Law are valid and constitutional

and as modified the judgment is affirmed without costs.

Opinion by SCONIERS, J.: For the past 100 years, certain publicly-funded construction projects in this State having a cost that exceeds a specific monetary threshold (qualifying projects) have been subject to legislation generally known as the "Wicks Law." The Wicks Law is comprised of a collection of statutes found, inter alia, in the General Municipal Law, State Finance Law, Public Authorities Law, Public Housing Law and Education Law. The Wicks Law requires a

governmental entity contracting for a qualifying project to prepare separate bid specifications and award separate contracts for three categories of work, i.e., plumbing and gas fitting; heating, ventilating and air conditioning; and electric wiring and light fixtures (*see* General Municipal Law § 101 [1] [a] - [c]; [2]; State Finance Law § 135; Public Authorities Law §§ 1045-i [2-a]; 1048-i [2-a]; 3303 [10] [c-1]; 3402 [9] [c-1]; 3603 [9] [c-1]; 3628 [11] [c-1]; Public Housing Law § 151-a [2-a]; Education Law § 458 [2-a]).  Upon enactment of the Wicks Law in 1912, the initial monetary threshold for publicly-funded projects subject to such separate bidding requirements was $1,000 (*see* L 1912, ch 514).  The threshold increased various times until it reached $50,000 in 1961 for projects funded by the State (*see* L 1961, ch 292) and in 1964 for projects funded by political subdivisions of the State (*see* L 1964, ch 572).

The $50,000 threshold remained uniform for all governmental entities until 2008, when the Legislature enacted comprehensive reforms to the Wicks Law (*see* L 2008, ch 57, Part MM).  The 2008 amendments, which went into effect on July 1, 2008 (*see* L 2008, ch 57, Part MM, § 20), increased the monetary threshold to $3 million for the five counties comprising New York City, $1.5 million for the downstate suburban counties of Nassau, Suffolk and Westchester, and $500,000 for all other counties (*see e.g.* L 2008, ch 57, Part MM, § 1).  In addition to creating that three-tiered monetary threshold, the 2008 amendments altered the Wicks Law framework by providing a means for governmental entities to opt out of the Wicks Law's separate bidding requirements altogether.  Recently-enacted Labor Law § 222, entitled "Project labor agreements," exempts qualifying projects from those requirements provided that a project labor agreement complying with the terms of that section is in place (*see* Labor Law § 222 [2] [b]).

Plaintiffs commenced this action alleging 21 causes of action challenging the 2008 amendments to the Wicks Law on the ground that those amendments violate several provisions of the New York State and Federal Constitutions, and seeking, inter alia, judgment declaring the 2008 amendments to be unconstitutional and enjoining their enforcement.  Plaintiffs are:  Empire State Chapter of Associated Builders and Contractors, Inc. and Buffalo Niagara Partnership Inc., professional organizations whose members are subject to the Wicks Law; Alleghany Industrial Insulation Co., a Pennsylvania construction corporation that performs work on public projects in New York, its President Daniel J. Brinsky and construction foreman Doug Byerly; M.G.M. Insulation, Inc., a minority-owned business; Innovative Mechanical Systems, Inc., a women-owned business; and the County of Erie and Chris Collins, its former County Executive.  Defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) (3) and (7) on the grounds that plaintiffs lack standing with respect to certain causes of action and the complaint fails to state a cause of action.  Supreme Court granted the motion and dismissed the complaint (*Empire State Ch. of Associated Bldrs. & Contrs., Inc. v Smith*, 30 Misc 3d 455).  Because plaintiffs seek declaratory relief, however, we conclude that "the proper course is not to dismiss the complaint but rather to issue a declaration in favor of the defendants" (*Maurizzio v Lumbermens Mut. Cas. Co.*, 73 NY2d 951, 954; *see Matter of Penfield Tax Protest Group v*

*Yancey*, 210 AD2d 901, *appeal dismissed* 85 NY2d 903, *lv denied in part and dismissed in part* 96 NY2d 760).  We therefore conclude that the judgment should be modified by reinstating the complaint insofar as declaratory relief was sought, and for the reasons that follow, we conclude that judgment should be granted in favor of defendants declaring that the 2008 amendments to the Wicks Law, to the extent that they are challenged by plaintiffs, are valid and constitutional.

## I.  Home Rule

Plaintiffs' first cause of action alleges that the 2008 amendments, insofar as they establish different monetary thresholds for the cost of public construction projects subject to the separate bidding requirements of the Wicks Law, were enacted in violation of the home rule provisions of the New York State Constitution (hereafter, Constitution) (*see* NY Const, art IX, § 2 [b]).  The court concluded that plaintiffs lack standing to invoke that provision, but that, in any event, the three-tiered monetary threshold does not violate the home rule article.  We agree with plaintiffs at least insofar as they contend that the County of Erie has standing to challenge the 2008 amendments under the home rule provisions of the Constitution, but we nevertheless conclude that the 2008 amendments survive that challenge.

Article IX of the Constitution grants to local governments certain "rights, powers, privileges and immunities" with respect to local matters (NY Const, art IX, § 1; *see Matter of Kelley v McGee*, 57 NY2d 522, 537; *see also City of New York v Patrolmen's Benevolent Assn. of City of N.Y. [PBA I]*, 89 NY2d 380, 387).  While a local government may not, as a general rule, challenge the constitutionality of an act of the Legislature affecting its powers, that general rule does not apply here (*see Town of Black Brook v State of New York*, 41 NY2d 486, 488).  "Undiscriminating application of the general rule to the instant case[]would undermine the home rule protection afforded local governments in article IX of the Constitution, by subverting the very purpose of giving the local governments powers which the State Legislature is forbidden by the Constitution to impair or annul except as provided in the Constitution" (*id.*).  We conclude, therefore, that the County of Erie possesses standing to challenge the 2008 amendments as an allegedly unconstitutional impairment of its home rule powers protected under article IX.

Plaintiffs contend that the three-tiered monetary threshold created by the 2008 amendments constitutes a special law that was enacted in violation of constitutional home rule mandates.  Pursuant to article IX, section 2 of the Constitution, the Legislature possesses authority to enact general laws and special laws affecting local governments (*see Patrolmen's Benevolent Assn. of City of N.Y. v City of New York [PBA II]*, 97 NY2d 378, 385).  A "[g]eneral law" is defined in relevant part as a "law which in terms and in effect applies alike to all counties . . . all cities, all towns or all villages" (NY Const, art IX, § 3 [d] [1]).  A "[s]pecial law," on the other hand, is defined in relevant part as a "law which in terms and in effect applies to one or more, but not all, counties, . . . cities,

towns or villages" (NY Const, art IX, § 3 [d] [4]).  In contrast with a general law, a special law that relates to the property, affairs or government of a local government may not be enacted without a "home rule message" (*PBA II,* 97 NY2d at 385), i.e., a "request of two-thirds of the total membership of [the municipality's] legislative body or [a] request of its chief executive officer concurred in by a majority of such membership" (NY Const, art IX, § [2] [b] [2]).

The 2008 amendments to the Wicks Law relate to the "property, affairs or government" of the County of Erie (*id*.).  We agree with plaintiffs, moreover, that the three-tiered monetary threshold created by the 2008 amendments constitutes a special law inasmuch as the new monetary thresholds apply differently "in terms and in effect" to the counties classified within each tier (NY Const, art IX, § 3 [d] [4]).  Additionally, a special law ordinarily triggers the procedural requirement of a home rule message, and none accompanied the enactment of the 2008 amendments (*see PBA I*, 89 NY2d at 389).

Our conclusion that the provisions at issue constitute a special law, however, does not end our inquiry regarding the constitutionality of those provisions under the home rule article (*see PBA II,* 97 NY2d at 387-388; *Matter of Kelley*, 57 NY2d at 537).  As the Court of Appeals explained in *PBA II*:

> "A recognized exception to the home rule message requirement exists when a special law serves a substantial State concern.  To overcome the infirmity of enacting a special law without complying with home rule requirements, the enactment must have a reasonable relationship to an accompanying substantial State concern.  Thus, a special law that relates to the property, affairs or government of a locality is constitutional only if enacted upon a home rule message or the provision bears a direct and reasonable relationship to a '*substantial* State concern' " (97 NY2d at 386 [internal citations omitted]; *see City of New York v State of New York*, 94 NY2d 577, 591-592; *Matter of Town of Islip v Cuomo*, 64 NY2d 50, 56).

We conclude that the subject matter of the 2008 amendments bears a direct and reasonable relationship to a substantial State concern, and thus the Legislature acted by virtue of the powers reserved to it under article IX of the Constitution in enacting those amendments (*see generally Matter of Kelley*, 57 NY2d at 537-539).  The separate bidding requirements codified, inter alia, in the General Municipal Law, State Finance Law, Public Authorities Law, Public Housing Law and Education Law were enacted to further the State's substantial concern of "assur[ing] the prudent and economical use of public moneys for the benefit of all the inhabitants of the state and . . . facilitat[ing] the acquisition of facilities and commodities of maximum quality at the lowest possible cost" (General Municipal Law § 100-a).  The statutes regulating public works projects, including the Wicks Law,

"have been described as evincing 'a strong public policy of fostering honest competition in order to obtain the best work or supplies at the lowest possible price.  In addition, the obvious purpose of such statutes is to guard against favoritism, improvidence, extravagance, fraud and corruption' " (*Matter of New York State Assn. of Plumbing-Heating-Cooling Contrs. v Egan*, 86 AD2d 100, 102, *affd* 60 NY2d 882, quoting *Jered Contr. Corp. v New York City Tr. Auth.*, 22 NY2d 187, 192-193).  More specifically, the Wicks Law, which provides

> "for individual bids in three separate subdivisions of work to be performed[,] exists to insure some form of expertise in these areas of construction, rather than having all bids made by general contractors who would subcontract these various classes of work in their own discretion and at a potential hazard to the State, and by this process eliminate many competent specialty contractors and bidders in these separate categories from direct participation in the examination of specifications and the ultimate performance of the work.  The State, and thus the people, would incur any ultimate loss.  The reasons for this statutory provision are sound and in the best interest of the State" (*Matter of Nager Elec. Co. v Office of Gen. Serv. of State of N.Y.*, 56 Misc 2d 975, 977, *affd* 30 AD2d 626, *lv denied* 22 NY2d 645).

Although plaintiffs question the wisdom of the different monetary thresholds generally, they do not attack the overall Wicks Law scheme (*see generally Building Contrs. Assn. v State of New York*, 218 AD2d 722, 723).  Rather, plaintiffs seek primarily to challenge the 2008 amendments' classification of counties within the three-tiered monetary threshold structure as arbitrary and unrelated to the State's concern.  The court properly rejected that challenge.  "Once a statute is found to involve an appropriate level of State interest, the fact that it effects a classification among the local governments it regulates does not render the enactment invalid, so long as that classification is reasonable and related to the State's purpose" (*Kelley*, 57 NY2d at 540; *see Matter of Radich v Council of City of Lackawanna*, 93 AD2d 559, 564, *affd* 61 NY2d 652; *Uniformed Firefighters Assn. v City of New York*, 50 NY2d 85, 90).  Our review of the three-tiered classification created by the 2008 amendments must be guided by the presumption that the Legislature acted within constitutional limits and investigated and found facts supporting that classification (*see Farrington v Pinckney*, 1 NY2d 74, 88; *see also Hotel Dorset Co. v Trust for Cultural Resources of City of N.Y.*, 46 NY2d 358, 370), and "[w]e need only find some *reasonable* and *possible* basis for the classification created" (*Farrington*, 1 NY2d at 89).

Here, certain documents issued by the Governor's Office related to the amendments to the Wicks Law indicate that the 2008 amendments reflect the Legislature's judgment that the monetary threshold in place since the 1960s had become out-of-date, and that raising that

threshold would ease the burden that the Wicks Law imposes on local governments by eliminating smaller projects from the Wicks Law mandates.  Those documents also support defendants' position that the three-tiered monetary threshold was devised to take into consideration geographically-based differences in the costs of construction.  The record therefore establishes that the classification created by the 2008 amendments, distinguishing between the counties comprising New York City, its immediate suburbs, and the remainder of the State, bears a reasonable relationship to the purpose of those amendments (*see generally PBA II*, 97 NY2d at 387-388; *Kelley*, 57 NY2d at 540; *Uniformed Firefighters Assn.*, 50 NY2d at 90-91; *Farrington*, 1 NY2d at 94).

Having concluded that the 2008 amendments to the Wicks Law address matters of substantial State concern and that the three-tiered classification is reasonable and related to that concern, our inquiry concerning the alleged violation of the home rule article is at an end.  We are guided by the requirement that courts must "exercise a large measure of restraint when considering" the bases for the Legislature's choices concerning the counties placed in each tier of the classification and the specific monetary thresholds for each tier (*Hotel Dorset Co.*, 46 NY2d at 369).  This Court "must operate on the rule that it may not substitute its judgment for that of the body which made the decision" (*id.* at 370).  Indeed, we must be mindful that the Legislature " 'has no obligation to produce evidence to sustain the rationality of a statutory classification.  A legislative choice is *not subject to courtroom fact[-]finding*' " (*Port Jefferson Health Care Facility v Wing*, 94 NY2d 284, 291, *cert denied* 530 US 1276).  Further, as the Court of Appeals recently observed:

> "It is well settled that acts of the Legislature
> are entitled to a strong presumption of
> constitutionality and we will upset the balance
> struck by the Legislature and declare the . . .
> plan unconstitutional only when it can be shown
> beyond reasonable doubt that it conflicts with the
> fundamental law, and that until every reasonable
> mode of reconciliation of the statute with the
> Constitution has been resorted to, and
> reconciliation has been found impossible, the
> statute will be upheld" (*Cohen v Cuomo*, 19 NY3d
> 196, 201-202 [internal quotation marks omitted]).

The Legislature acted within its province in determining, as a matter of statewide concern, that it was necessary to provide relief to all of the counties of the State by easing the fiscal and administrative burdens of Wicks Law compliance.  The Legislature further determined that differences in the costs of construction should be considered in providing such relief, and it created the three-tiered classification accordingly.  Nothing in the home rule provisions of article IX of the Constitution requires the Legislature to create a classification that would extend the benefits of the 2008 amendments equally.  All that "is required is that the classification be defined by conditions common to the class and related to the

subject of the statute" (*Uniformed Firefighters Assn.*, 50 NY2d at 90). That requirement is met here, and neither the wisdom behind the creation of the classification nor the amount of the specific monetary thresholds chosen by the Legislature is an appropriate subject of judicial fact-finding (*see generally Paterson v University of State of N.Y.*, 14 NY2d 432, 438; *Farrington*, 1 NY2d at 94).

## II.  Labor Law § 222

Nearly all of the remaining causes of action turn on plaintiffs' interpretation of recently-enacted Labor Law § 222.  That section, which as previously noted is entitled "Project labor agreements," is an integral part of the comprehensive Wicks Law reforms enacted in 2008.  It defines a "[p]roject labor agreement" (PLA) and sets forth the conditions for the use of PLAs in publicly-funded construction projects.  A PLA is defined as:

> "a pre-hire collective bargaining agreement
> between a contractor and a bona fide building and
> construction trade labor organization establishing
> the labor organization as the collective
> bargaining representative for all persons who will
> perform work on a public work project, and which
> provides that only contractors and subcontractors
> who sign a pre-negotiated agreement with the labor
> organization can perform project work" (§ 222
> [1]).

Section 222 (2) (e) states in pertinent part that, "[w]ith respect to *any* contract for construction" meeting the Wicks Law monetary thresholds, the contracting governmental entity "shall . . . require that each contractor and subcontractor shall participate in apprentice training programs . . . that have been approved by the [D]epartment [of Labor]" (emphasis added).  Plaintiffs contend that the apprentice training requirement of that section applies to all Wicks Law contracts, and thereby disqualifies out-of-state contractors from large public construction projects in violation of the Privileges and Immunities Clause (US Const, art IV, § 2 [1]) and the "dormant" Commerce Clause (US Const, art I, § 8 [3]).  Plaintiffs further contend that the statute inhibits a disproportionate number of minority-owned and women-owned businesses from qualifying to work on such projects in violation of the rights of those businesses to equal protection of the laws under the New York State and Federal Constitutions (NY Const, art I, § 11; US Const, 14th Amend, § 1) and pursuant to 42 USC § 1983.  Defendants respond that, contrary to plaintiffs' interpretation of Labor Law § 222 (2) (e), the apprenticeship training program requirement does not apply to all contracts subject to the Wicks Law, but applies only to those contracts where the government entity has elected to utilize a PLA and thereby to opt out of the separate bidding mandate.

We agree with defendants' interpretation of Labor Law § 222 (2) (e).  At the outset, we note that a statute is presumptively constitutional and should be construed in such a manner that its

constitutionality may be upheld (*see Eaton v New York City Conciliation & Appeals Bd.*, 56 NY2d 340, 346). "Where the language of a statute is susceptible of two constructions, the courts will adopt that which avoids injustice, hardship, constitutional doubts or other objectionable results" (*Matter of Jacob*, 86 NY2d 651, 667 [internal quotation marks omitted]; *see Rogoff v Anderson*, 34 AD2d 154, 157, *affd* 28 NY2d 880, *appeal dismissed* 404 US 805). While plaintiffs' reading of the statute would render it discriminatory and unconstitutional, it was incumbent upon the court " 'to avoid interpreting [the] statute in a way that would render it unconstitutional if such a construction can be avoided and to uphold the legislation if any uncertainty about its validity exists' " (*Astoria Fed. Sav. & Loan Assn. v State of New York*, 222 AD2d 36, 45, *appeal dismissed* 88 NY2d 1064, *lv denied* 89 NY2d 807, *cert denied* 522 US 808, quoting *Alliance of Am. Insurers v Chu*, 77 NY2d 573, 585).

Here, while Labor Law § 222 (2) (e) states that it applies to "any contract for construction," the court properly concluded that the quoted language does not refer to any contract subject to the Wicks Law but, rather, it refers to any contract subject to a PLA. That interpretation follows from the language of subdivision (2) (e), which refers to "[a]ny contract . . . with respect to each project undertaken pursuant to this section," i.e., pursuant to Labor Law § 222, "Project labor agreements." While that section's heading "cannot trump the clear language of the statute," it may be used in resolving an ambiguity in the meaning of the statute (*Matter of Suffolk Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd.*, 11 NY3d 559, 571; *see Maloney v Stone*, 195 AD2d 1065, 1067). Here, the heading of section 222 resolves the ambiguity created by the language "any contract" used therein in favor of the interpretation advocated by defendants.

Plaintiffs further contend that the requirement that contractors and subcontractors "participate in apprentice training programs" to be eligible for work on public projects has the effect of barring out-of-state contractors and severely disadvantaging minority-owned and women-owned businesses from qualifying for work on those projects (Labor Law § 222 [2] [e]). That contention, however, hinges on the assumption that section 222 (2) (e) requires a contractor or subcontractor to maintain an apprentice training program of its own. Neither the language nor the purpose of the statute supports that interpretation. The Department of Labor, which is charged with the enforcement of the Wicks Law, including the PLA provisions enacted in 2008 (*see* Labor Law §§ 2 [2]; 224 [1]), has concluded that, if a contractor or subcontractor enters into a PLA that meets the requirements of section 222, those contractors and subcontractors who perform work under the PLA are deemed to be participating in apprenticeship programs within the meaning of that section. The Department of Labor's interpretation, viewed in the light of the language and purpose of the statute, is reasonable (*see generally Suffolk Regional Off-Track Betting Corp.*, 11 NY3d at 571).

Consequently, we conclude that the court properly dismissed the 2nd through 5th and 7th through 21st causes of action to the extent

that they rest upon plaintiffs' erroneous interpretation of Labor Law § 222 (2) (e).

### III.   State Finance Law § 123-b

The court also properly dismissed the sixth cause of action, a citizen taxpayer cause of action brought pursuant to State Finance Law § 123-b (1).  Plaintiffs allege that the 2008 amendments waste taxpayer funds by excluding out-of-state contractors and minority-owned and women-owned businesses from qualifying to obtain work on public construction projects, and by inflating the cost of those projects.  Plaintiffs' allegations, however, amount to no more than "a claim that state funds are not being spent wisely[, which] is patently insufficient to satisfy the minimum threshold for standing" under the statute (*Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801, 813, *cert denied* 540 US 1017; *see Matter of Transactive Corp. v New York State Dept. of Social Servs.*, 92 NY2d 579, 589).  Plaintiffs, moreover, fail to allege "some specific threat of an imminent expenditure," and thus lack standing to bring a citizen taxpayer action on that ground as well (*Godfrey v Spano*, 13 NY3d 358, 374).

### IV.   Equal Protection

In the 16th through 18th causes of action, plaintiffs allege, inter alia, that the 2008 amendments to the Wicks Law constitute a violation of the State and Federal guarantees of equal protection of the laws inasmuch as those classifications favor downstate counties over upstate counties and union contractors over non-union contractors.  Contrary to plaintiffs' contention, the 2008 amendments neither interfere with the exercise of a fundamental right nor involve a suspect class, and thus our review is governed by the rational basis standard.  Under that standard, plaintiffs bore the burden " 'to negative every conceivable basis which might support [the 2008 amendments], *whether or not the basis has a foundation in the record*' " (*Affronti v Crosson*, 95 NY2d 713, 719, *cert denied* 534 US 826, quoting *Heller v Doe*, 509 US 312, 320-321).  Plaintiffs have not alleged facts sufficient to meet that burden.  As discussed above, the three-tiered monetary threshold meets the more exacting standard of the home rule article in that it bears "a reasonable relationship to an accompanying substantial State concern" (*PBA II*, 97 NY2d at 386; *see PBA I*, 89 NY2d at 389).  Further, plaintiffs fail to establish that those sections of the Labor Law sanctioning the use of PLAs unconstitutionally favor union contractors over non-union contractors (*see Matter of New York State Ch., Inc., Associated Gen. Contrs. of Am. v New York State Thruway Auth.*, 88 NY2d 56, 76).

### V. Conclusion

Accordingly, we conclude that the judgment should be modified by reinstating the complaint to the extent that declaratory relief was sought and by declaring that the 2008 amendments to the Wicks Law, insofar as they are challenged by plaintiffs, are valid and constitutional.

FAHEY and CARNI, JJ., concur with SCONIERS, J.; PERADOTTO, J.,
dissents and votes to modify in accordance with the following Opinion
in which CENTRA, J.P., concurs:  We respectfully dissent because, in
our view, the three-tiered classification established by the 2008
amendments to the Wicks Law is arbitrary and not reasonably related to
the State purpose underlying the law or the amendments.  We would
therefore reinstate the complaint and declare that the three-tiered
classification is unconstitutional under the home rule provisions of
the New York State Constitution (see NY Const, art IX, § 2 [b]).

This appeal concerns the validity of the 2008 amendments to a
series of statutes collectively referred to as the "Wicks Law" (see
e.g. Matter of Diamond Asphalt Corp. v Sander, 92 NY2d 244, 260, rearg
denied 92 NY2d 921).  As noted by the majority, the Wicks Law requires
New York State and its political subdivisions to award separate
contracts for three categories of work, i.e., electrical; plumbing;
and heating, ventilation, and air conditioning, for public
construction projects exceeding a specified monetary threshold (see
General Municipal Law §§ 101 [1] [a] - [c]; [2]; 103; State Finance
Law § 135; Labor Law § 222 [2] [e]; Public Housing Law § 151-a [1] [a]
- [c]; [2]).  When the Wicks Law was first enacted in 1912, the
initial monetary threshold for projects subject to such separate
bidding requirements was $1,000 (see L 1912, ch 514).  The threshold
was increased to $50,000 in 1961 for State projects (see L 1964, ch
292) and in 1964 for local government projects (see L 1964, ch 572).

The threshold remained at $50,000 until 2008, when the
Legislature enacted various reforms to the Wicks Law (see L 2008, ch
57, Part MM).  The 2008 amendments, which went into effect on July 1,
2008 (see L 2008, ch 57, Part MM, § 20), increased the monetary
threshold to $3 million for the five counties comprising New York
City, $1.5 million for the downstate suburban counties of Nassau,
Suffolk, and Westchester, and $500,000 for all other counties (see L
2008, ch 57, Part MM, § 1).  In addition to creating the three-tiered
classification among counties, the 2008 amendments established a means
for governmental entities to opt out of the Wicks Law requirements by
entering into a "Project labor agreement" (see Labor Law § 222 [2]
[b]).

Plaintiffs commenced this action challenging the
constitutionality of the 2008 amendments and seeking, inter alia,
judgment declaring that the amendments are unconstitutional and
enjoining their enforcement.  In 21 causes of action, plaintiffs
allege that the 2008 amendments violate various provisions of the New
York State and United States Constitutions, including the home rule
provisions of the New York State Constitution (see NY Const, art IX, §
2 [b]) and the equal protection clauses of the State and Federal
constitutions (see US Const, 14th Amend, § 1; NY Const, art I, § 11).
With respect to the home rule provisions, plaintiffs allege in their
first cause of action that the different monetary thresholds
established by the 2008 amendments constitute "an invalidly-enacted
special law" that "bears no reasonable relationship to any substantial
concern of New York State."  Defendants moved to dismiss the complaint
pursuant to CPLR 3211 (a) (3) and (7) on the grounds that plaintiffs

lacked standing with respect to certain causes of action and that the complaint failed to state a cause of action.  Supreme Court granted the motion and dismissed the complaint.

At the outset, we agree with the majority that plaintiffs have standing to challenge the constitutionality of the 2008 amendments under the home rule provisions of article IX of the New York State Constitution.  We also agree with the majority that, although the three-tiered classification system created by the 2008 amendments constitutes a "special law," i.e., a "law which in terms and in effect applies to one or more, but not all, counties" (NY Const, art IX, § 3 [d] [4]), a home rule message was not required inasmuch as the substance of the 2008 amendments bears a direct and reasonable relationship to a substantial State concern (*see Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 97 NY2d 378, 386).  The declared purpose of the Wicks Law is "to assure the prudent and economical use of public moneys for the benefit of all the inhabitants of the state and to facilitate the acquisition of facilities and commodities of maximum quality at the lowest possible cost" (General Municipal Law § 100-a).  With respect to the 2008 amendments, the legislative history reflects that the Wicks Law monetary thresholds were increased in order to reduce the financial burden on local governments (*see generally* Assembly Mem in Support, Bill Jacket, L 2008, ch 57).  According to documents included in the record before us, the Governor's Program Bill from a proposed 2007 bill that was substantially similar to the 2008 amendments stated that, since the monetary thresholds were last increased in 1964, "the costs of real estate, labor and materials for public works projects have risen dramatically, subjecting an ever-increasing number of public works contracts to the separate specifications requirements." The purpose of the bill was to "recalibrate" the thresholds in order to allow smaller public works projects to "proceed without separate specifications."

We agree with the majority that raising the monetary thresholds set in 1964 to reflect the increased cost of public construction is reasonably related to both the original purpose of the Wicks Law and the purpose of the 2008 amendments, i.e., to provide local governments with much-needed relief from the financial and administrative burdens imposed by the Wicks Law.  We cannot agree with the majority's further conclusion, however, that the three-tiered classification is rational and reasonably related to those State concerns.  "Once a statute is found to involve an appropriate level of State interest, the fact that it effects a classification among the local governments it regulates does not render the enactment invalid, *so long as that classification is reasonable and related to the State's purpose*" (*Matter of Kelley v McGee*, 57 NY2d 522, 540 [emphasis added]; *see Farrington v Pinckney*, 1 NY2d 74, 89).  Contrary to the conclusion of the majority, we conclude that the monetary thresholds underlying the three-tiered classification are arbitrary, and that the classification is not reasonably related to the State interests of:  (1) protecting the public fisc by requiring local governments to award multiple contracts for public construction projects; and (2) reducing the burden of the Wicks Law mandate on local governments by exempting smaller projects

from its ambit (*cf. Farrington*, 1 NY2d at 91-92).

Notably, the Bill Jacket for the 2008 amendments lacks any discussion of the rationale underlying the three-tiered classification system or the justification for the different monetary threshold amounts (*see* Bill Jacket, L 2008, ch 57).  The amendments were passed as part of the 2008-2009 budget bill, and the only portion of the Bill Jacket specifically addressing Wicks Law reform states that the amendments "advance[] increases in Wicks [L]aw thresholds that help reduce property taxes by lowering local construction costs.  These thresholds would rise from $50,000 to $3 million in New York City, $1.5 million in Nassau, Suffolk, and Westchester counties, and $500,000 in all other counties."  The majority relies on various documents in the record concerning the legislative history for the 2008 amendments as well as documentation in the record that appears to have been generated during the debate on a similar 2007 bill that did not pass the Legislature.  Former New York Governor Elliot Spitzer originally proposed a two-tiered classification consisting of New York City and the rest of the State, and then amended his proposal to suggest a three-tiered classification.  An October 2007 press release from the Governor's Office asserted that the proposed changes to the Wicks Law would "exempt more than 70 percent of public works projects from Wicks requirements and provide real savings for schools, local governments and other public entities."

The majority concludes that certain documents issued by the Governor's Office related to the amendments to the Wicks Law support defendants' contention that the three-tiered classification was devised to reflect geographically-based differences in construction costs.  In support of that contention, defendants cite three documents in the record:  (1) a January 2008 State of the State Address "Fact Sheet," which notes only that proposed amendments to the Wicks Law include "[a] three-tiered threshold system to take into consideration the geographic differences in the cost of construction"; (2) the statement of Assemblyman Joseph D. Morelle during debate over the 2007 proposed bill that "there are differentials and costs that relate from region to region"; and (3) a June 2007 Legislative Gazette article stating that the different thresholds "reflect the geographic difference in construction costs."

Notably absent from the record is any discussion of the basis for the monetary thresholds underlying the three-tiered classification. While it is common knowledge that it likely costs more to construct a building in New York City than in municipalities outside metropolitan New York, we conclude that the threshold monetary amounts selected by the Legislature must have some factual or evidentiary support beyond the general proposition that the cost of construction is higher in downstate counties than in their upstate counterparts.  In other words, the monetary thresholds must be tied to some economic or other objective indicator.  Here, the legislative history contains no reference to the basis for the monetary thresholds selected by the Legislature.  Indeed, the only facts in the record concerning geographic disparities in construction costs appear in documents from the Department of Education detailing regional cost factors for 2006-

2009, which were submitted in support of defendants' motion to dismiss the complaint.  Those documents list composite labor rates for each county in New York, i.e., the average hourly labor rate plus supplemental benefits for carpenters, plumbers and electricians.  In 2008-2009, the composite labor rate in New York City was $80.57, while the labor rates in the three downstate suburbs were $71.33 for Nassau and Suffolk and $69.58 for Westchester.  The composite labor rate in upstate counties during 2008-2009 ranged from a low of $39.59 in Jefferson, Lewis, and St. Lawrence Counties to a high of $69.58 in Dutchess County.  The composite labor rates in Erie, Monroe, and Onondaga Counties during that time frame were $46.23, $43.79, and $41.30, respectively.  While the above data reflects that the labor costs in New York City may be as much as double or nearly double the labor costs in certain upstate counties, it clearly does not support the six-fold difference in the $3 million threshold applicable to New York City and the $500,000 threshold applicable to the 54 counties north of Westchester County, or the three-fold difference in the $1.5 million threshold applicable to Long Island and Westchester County compared to the $500,000 threshold applicable to upstate counties.

As Assemblyman Morelle stated during the 2007 debate over the monetary thresholds:

> "I recognize, as I think most people around the State do, that there are differentials and costs that relate from region to region.  There may be differences in cost, and it seems to me an appropriate place for indexing, [but] . . . I have a hard time imagining that construction costs between the City of New York and the City of Rochester are a differential [of] six-to-one."

Indeed, Morelle asserted that the costs of concrete, fuel, and other raw materials are roughly the same around the State.  Assemblyman Clifford Crouch, of Binghamton, likewise recognized cost differences around the State, but not to the extent reflected in the three-tiered classification.  Of further note, Assemblywoman Ellen Jaffee of Rockland County pointed out that labor costs in her district are nearly equivalent to those in Westchester County, which is across the Hudson River from Rockland County.  Yet Westchester County enjoys a $1.5 million threshold for purposes of the Wicks Law while Rockland County is subject to the $500,000 threshold.

A review of the legislative record clearly indicates that a key purpose of the 2008 amendments was to relieve New York City from much of the burden imposed by the Wicks Law, with the remainder of the State being somewhat of an afterthought.  According to the 2007 Governor's Program Bill in the record, the changes would "sav[e] New York City over $136 million in the first year alone."  An April 2008 press release from the Governor's Office also included in the record touted that the reforms will "reduce [New York] City's long term capital construction costs by more than $200 million in its upcoming City Fiscal Year (CFY) 2009 Capital Plan, and will carry annual debt service savings of $14 million by CFY 2012," and further noted that

"[l]ocalities across the State will also realize millions of dollars more in savings."

Defendants contend that the three-tiered classification was designed to exempt approximately 70% of all public construction projects from the requirements of the Wicks Law. That figure, which appears several times in the record on appeal, is apparently based upon New York City Mayor Michael R. Bloomberg's testimony before the Assembly Ways and Means and Senate Finance Committees that the proposed amendments to the Wicks Law "would cover more than *70% of City capital projects*, permitting construction to proceed more quickly, efficiently, and at considerably less cost" (emphasis added). There is nothing in the record to indicate that the $500,000 threshold applicable to the 54 upstate counties will cover 70% or even 50% of the capital projects in those communities. Indeed, the record includes an editorial from the Daily Freeman newspaper, covering the mid-Hudson region, which states that "[y]ou'd have a hard time building a couple of wheelchair ramps at some public buildings for less than $500,000, meaning the reformed limits mean little for the vast majority of potential municipal projects." The Binghamton City School District's director of facilities and operations was quoted in a Press & Sun-Bulletin article, also included in the record, as stating that, "[i]n today's dollars, $500,000 doesn't get you a lot of work." Similarly, an April 2008 Watertown Daily Times editorial asserted that the 2008 amendments "will have very limited impact in Northern New York," pointing to "all the school construction or other public building projects that far exceed the $500,000 threshold." Indeed, Assemblyman Marcus Molinaro of Dutchess County stated that "$500,000 couldn't even barely build a home in [his] community."

We thus conclude that the three-tiered classification established by the 2008 amendments is arbitrary and not reasonably related to the stated purpose of the amendments, i.e., to "provide fiscal relief and increased flexibility for local governments" while at the same time maintaining the Wicks Law goal of fostering the "prudent and economical use of public moneys for the benefit of all the inhabitants of the [S]tate" (General Municipal Law § 100-a). In reaching this conclusion, we are cognizant of the general presumption, cited by the majority, that "the Legislature has investigated and found facts necessary to support the legislation" (*Hotel Dorset Co. v Trust for Cultural Resources of City of N.Y.*, 46 NY2d 358, 370). In this case, however, the record belies that presumption. Although a tiered classification system based on geographic disparities in construction costs may be reasonable and appropriate, the specific monetary thresholds in this case are arbitrary and unsupported by the legislative record. Accordingly, we would modify the judgment by reinstating the complaint, and we would declare that those parts of the 2008 amendments to the Wicks Law establishing the three-tiered classification are unconstitutional and enjoin defendants from enforcing the disparate thresholds.

Entered:  July 6, 2012                          Frances E. Cafarell
                                                Clerk of the Court